[No. 14300.  *En Banc.*  August 9, 1917.]

THE STATE OF WASHINGTON, *on the Relation of I. M. Howell,*
*Secretary of State, Plaintiff,* v. THE SUPERIOR COURT
FOR THURSTON COUNTY, *D. F. Wright, Judge,*
*Respondent.*[1]

STATUTES—INITIATIVE AND REFERENDUM—FILING OF ADDITIONAL PE-
TITIONS—CANVASS OF NAMES. Notwithstanding that Const., art. 2,
§ 1, as amended, providing for the initiative and referendum, and
the act passed to facilitate the same, Rem. Code, §§ 4971-11 to 4971-18,
use the word "petition" in the singular number, in requiring a refer-
endum petition, circulated among the voters, to be filed with the
secretary of state, the law does not require that the petition must
be physically one petition, as that would be impossible; and the
filing of a petition consisting of a number of sheets or petitions by
a proponent does not constitute such a final submission of a petition
as to preclude the filing of additional petitions relating to the same
referendum, within the ninety days limited by the constitution; and
on the filing of such additional petitions, the secretary of state must
canvass the signatures upon the petitions theretofore filed, to de-
termine whether the proposed referendum has the requisite number
of signatures of legal voters; and it is immaterial that Id., § 4971-12
authorizes the secretary of state to refuse to file a petition unless it
appears to bear the requisite number of signatures, that § 4971-11,
requires a statement of expenses with the filing of each petition,
that § 4971-14 refers to the detaching of sheets for convenience in
canvassing, and that by § 4971-13, the secretary of state may destroy
petitions not containing the requisite number of signatures; as the
act must be liberally construed to facilitate the language and spirit
of the constitution (ELLIS, C. J., MORRIS, and MAIN, JJ., dissenting).

Certiorari to review a judgment of the superior court for
Thurston county, D. F. Wright, J., entered July 9, 1917,
granting a writ of mandamus requiring the secretary of
state to file referendum petitions and canvass the names
signed thereto, after a trial to the court. Affirmed.

*The Attorney General* and *L. L. Thompson, Assistant,* for
relator.

*Frank C. Owings,* for respondent.

[1]Reported in 166 Pac. 1126.

PARKER, J.—The relator, I. M. Howell, as secretary of state, has caused to be brought to this court by writ of review, and seeks reversal of, a judgment of the superior court for Thurston county awarding a writ of mandate requiring him to file referendum petitions and canvass the names signed thereto. The facts are not in dispute and may be summarized as follows: During the session of the legislature of 1917, there was passed, and thereafter, on February 19, approved by the governor, an act restricting importation, sale, use, and possession of intoxicating liquors, amending initiative measure Nó. 3, enacted by the people of the state in the year 1914. Laws of 1917, p. 46. On February 20, one E. M. Williams filed in the office of the secretary of state papers in due form evidencing his demand and proposal to have ordered by petition the referring of the above mentioned act of February 19 to the people. On March 1, the *Attorney General* formulated a ballot title for the act as a referendum measure. Upon the ballot title being so formulated, the proponent, Williams, caused to be printed in due form blank petitions for circulation among the voters of the state. These petitions were signed by a large number of persons claiming to be legal voters. On June 4, the proponent, Williams, submitted to the secretary of state for filing a large number of these signed petitions attached as one petition. The secretary received and filed these petitions and commenced his canvass looking to the final determination of the number of properly authenticated signatures of legal voters signed thereto. On June 6, the proponent, Williams, submitted to the secretary for filing several additional petitions, exactly like those submitted on June 4 except as to the signatures. There were on these additional petitions three hundred and ninety signatures purporting to be those of legal voters.

When the additional petitions were submitted to the secretary he had not completed the canvass of the names signed to the previously submitted petitions, and the number of sig-

natures of legal voters attached to the previously submitted petitions had not then been ascertained. Respondent Williams alleges that, if it should appear that there are not a sufficient number of signatures of legal voters attached to the petitions submitted on June 4 to call for the referring to the people of the act of February 19, there will be more than a sufficient number of signatures for that purpose counting the signatures of legal voters upon the petitions submitted on June 4 with those upon the petitions submitted on June 6. The secretary refused to receive and file these additional petitions and canvass the signatures thereon in connection with the signatures upon the petitions submitted on June 4. Thereupon respondent Williams sought, in the superior court of Thurston county, a writ of mandate requiring the secretary to receive and file these additional petitions and canvass the signatures thereon together with the signatures upon the petitions submitted on June 4. Trial in the superior court resulted in judgment awarding a writ of mandate as prayed for. It is the reversal of this judgment which is here sought.

Our problem is this: When the proponent of a referendum measure has filed with the secretary a petition consisting of a number of sheets or petitions such as the law prescribes, does such filing constitute the final submission of such petition in the sense that no additional petitions relating to the same referendum can be filed in behalf of the original proponent or of the signers of such filed petition within the ninety days prescribed by our constitution for the filing of referendum petitions, and the original proponent or the signers of the filed petition have the right to have signatures upon such additional petitions canvassed in connection with the signatures upon the filed petitions. Or, stated conversely, have the signers of such additional petitions the right to have the signatures upon such previously filed petitions canvassed in connection with the signatures upon the additional petitions.

Section 1, art. 2, of our constitution as amended, providing for the initiative and referendum, reads in part as follows:

"Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than .ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. . . . This section is self-executing, but legislation may be enacted especially to facilitate its operation." Amendment 7, subd. d.

While this section of the constitution provides generally for the initiative and referendum and purports to be self-executing, it would seem somewhat difficult to render it effective without legislation. . So, in compliance therewith, the legislature of 1913 passed an act facilitating the operation of the initiative and referendum. Laws of 1913, p. 418. That act, after providing for the filing with the secretary of state, by a legal voter or committee or organization of voters, of a demand or proposal for the referring to the people of an act passed by the legislature, the formulating by the *Attorney General* of a ballot title for such referendum measure and the form of petitions to be circulated, provides in part as follows:

"Sec. 11. When the person, committee or organization proposing any such initiative measure or demanding any such referendum . . . shall have secured upon any such referendum petition the signatures of thirty thousand legal voters, or the signatures of legal voters equal in number to or exceeding six per centum of the whole number of electors who voted for governor at the regular gubernatorial election last preceding, he or they may submit said petition to the secretary of state for filing in his office. At the time of submitting such petition the person, committee or organization, submitting the same shall file with the secretary of state a full, true and detailed statement giving the names and post office addresses of all persons, corporations and organizations who have contributed any monies to aid in the preparation, publication and advertising of the measure and the preparation,

circulation and filing of the petition, with the amount contributed by each, and a full, true and detailed statement of all expenditures, giving the amounts expended, the purpose for which expended, and the names and post office addresses of the persons and corporations to whom paid, which statement shall be verified by the affidavit of the person or some member of the committee or organization in charge of the measure, and until such statement is filed the secretary of state shall refuse to receive such petition." Laws 1913, p. 424, § 11 (Rem. Code, § 4971-11).

"Sec. 12. The secretary of state upon any such petition being submitted to him for filing shall examine the same, and if upon examination said petition appear to be in proper form and to bear the requisite number of signatures of legal voters, . . . if said petition be a referendum petition ordering and directing that the whole or some part or parts of a bill passed by the legislature be referred to the people for their approval or rejection at the next ensuing general election or a special election ordered by the legislature, and such petition is submitted for filing not more than ninety days after the final adjournment of the session of the legislature which passed the bill, the secretary of state shall accept and file said petition in his office; . . ." Rem. Code, § 4971-12.

Section 13 provides for an appeal to the superior court of Thurston county from a preliminary decision of the secretary of state refusing to file a petition, and

"In case no appeal is taken from the refusal of the secretary of state to file said petitions within the time prescribed, or in case an appeal is taken and the secretary of state is not required to file said petitions by the mandate of either the superior or the supreme court, the secretary of state shall destroy said petitions." Id., § 4971-13.

"Sec. 14. If the secretary of state accept and file any such initiative or referendum petition upon its being submitted for filing or if he be required to file the same by the court he shall forthwith, in the presence of the governor, or, if the governor be absent, in the presence of some other state officer and in the presence of the persons submitting such petition for filing, if such persons desire to be present, detach the sheets containing the signatures and certificates and cause them all to be firmly attached to one or more printed

copies of the proposed initiative or referendum measure in such volumes as will be most convenient for canvassing and filing, and shall number such volumes and file the same and stamp on each thereof the date of filing." Id., § 4971-14.

Sections 15, 16 and 17 (Id., §§ 4971-15 to 4971-17) provide for the canvassing by the secretary of the signatures upon the filed petitions with a view of finally determining the sufficiency of the number of legal voters signing the same to call for the referendum of the act in question, and for appeal from the decision of the secretary by any citizen who shall be dissatisfied with his determination that there is not a sufficient number of signatures of legal voters upon the petitions to call for the referendum of the act. Section 18 (Id., § 4971-18) provides that the secretary shall canvass and count the names on the petition within thirty days after its filing. Neither the constitution nor the facilitating act provides in terms for the filing of the additional petitions.

Counsel for the secretary contend that, because the facilitating act does not in terms authorize the filing of additional petitions, and because the constitution and facilitating act both use the word "petition" in the singular number when referring to the filing in the office of the secretary, the filing of the petitions on June 4 constituted a final submission by the proponent, and all the signers of those petitions, of the question of whether or not there shall be a referendum of the act, even though the ninety days prescribed by our constitution for the filing of such petitions had not expired. Now, if we were dealing only with the rights of Williams as the proponent of the referendum of this act, it might be said that *he* finally submitted his case to the secretary without recall and without the right of filing additional petitions, upon the filing of the petitions by him on June 4. But even that could result only from a very strict construction of the constitution and facilitating act. We are to remember, however, that we are not dealing with the rights of Williams alone, but with the rights of the several thousand other persons whose

names are signed to all these petitions. Indeed, his rights are no greater than those of each of the other several thousand signers, both of the petitions submitted on June 4 and the petitions submitted on June 6. Are all these petitioners, signing petitions exactly alike, asking for the referring to the people of this same act, their petitions all being submitted for filing with the secretary within the ninety days prescribed by the constitution for the filing of referendum petitions, to be denied the right to have their petitions all considered as one petition, and their signatures thereto all counted and canvassed as signatures to one petition, simply because they did not cause all their physically separate petitions to be attached together and offered for filing to the secretary at the same moment? We think to answer this question in the affirmative would do violence to the spirit of the constitution. Nor do we think the facilitating act calls for any such interpretation. Only the strictest construction of the constitution and of that act could lead to such a conclusion.

Counsel for the secretary concede that it is not necessary for all the signatures to be attached to a paper constituting one physical petition as it is circulated among the voters, as manifestly that would be impossible; though the constitution uses the word "petition" in the singular number. Yet they argue that all the signatures must be upon petitions physically attached to each other before being submitted for filing to the secretary; that is, that the petition must then be physically one petition. It is true that the secretary is not required to file any petition until "upon examination said petition appear . . . to bear the requisite number of signatures of legal voters;" this manifestly contemplating only a tentative examination, and not an examination for the purpose of finally determining the sufficiency of the number of signatures of legal voters to the petition to call for a referendum. But we think it does not follow that, after a petition has been received and filed by the secretary, it is his

duty or privilege to refuse to file additional petitions of exactly the same form with other signatures thereon asking for the same referendum, and refuse to count and canvass the names thereon together with the names on petitions already received and filed by him, when such additional petitions are submitted for filing within ninety days following the adjournment of the legislature, as these additional petitions were submitted for filing. We think the submitted additional petitions and the previously filed petitions then became, in legal effect, one petition.

We do not view this problem as one analogous to amendatory or supplemental pleadings, as counsel for the secretary seem to do. It appears to us to be more analogous to the bringing of additional interested parties into a cause where the rights of such additional parties are not impaired by any statute of limitation, and where the rights of such additional parties rest upon the same facts as do the rights of the original parties. Suppose that the proponent, Williams, had withheld from filing the petitions he submitted to the secretary on June 4, and submitted those petitions together with those submitted on June 6. Manifestly the secretary would not have been warranted in rejecting such petitions, it being conceded by him that the petitions as a whole appear to bear the requisite number of signatures of legal voters to call for the referendum. Again we ask, is it possible that the several thousand signers of these petitions, both those signing the petitions submitted on June 4 and those signing the petitions submitted on June 6, shall be deprived of the right to have all their signatures counted and canvassed as signers of one petition, which we think it is in legal effect, simply because one of their number, to wit, the proponent, Williams, happened to submit to the secretary a number of signed petitions attached together as one petition before the time for filing such petitions had expired? We find nothing in the constitution or law, nor upon the face of any of the petitions, making Williams, as the original proponent of the ref-

erendum, agent for any of the signers of the petitions, in
the sense that he was authorized to file any number of peti-
tions he might elect as one petition and thereby finally sub-
mit the case of the signers of such petitions, and of all
others who desired to sign such petitions, to the secretary for
final determination as to the sufficiency of the number of
legal voters asking for the referendum, before the expiration
of the ninety days following the adjournment of the legisla-
ture.    To hold that Williams was such an agent would in
effect defeat the right of all the signers of petitions exactly
alike, asking for the same referendum, submitted within the
ninety days prescribed by our constitution, to have canvassed
as upon one petition all the names signed to such petitions.
We think this right of the signers of petitions which are sep-
arate only in a physical sense is not to be defeated by the
mere fact of their petitions being submitted at different
times, when all are submitted within ninety days following the
adjournment of the legislature passing the act sought to be
referred to the people.    In other words, we think such physic-
ally separate petitions constitute one petition submitted as
of the date of the submission of the last one.    Any other
view, we think, would do violence to the spirit of the consti-
tution.

Whatever divergence of opinion there may be among the
courts touching the meaning of constitutional or statutory
provisions relating to the initiative and referendum, we think
it safe to say that all courts that have spoken upon the sub-
ject agree that such provisions are to be liberally construed,
to the end that these popular legislative rights of the people
reserved in the several constitutions where found may be pre-
served and rendered effective.    In *State ex rel. Case v. Su-*
*perior Court*, 81 Wash. 623, 143 Pac. 461, Ann. Cas. 1916B
838, we said:

"It is worthy of note, and that we keep in mind as we pro-
ceed, that these initiative and referendum provisions of our

constitution are all embodied in one section, which contains these words: 'This section is self-executing, but legislation may be enacted especially to facilitate its operation.' It was in compliance with this language that the legislature passed the act of 1913, the material portions of which we have above reviewed, declaring, in the title of that act, that it is 'to facilitate the operation of the provisions of § 1 of art. 2 of the constitution relating to the initiative and referendum.' Thus there is strongly suggested, in the language of the constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be *facilitated,* and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right."

While three of the judges dissented from the conclusion reached by the majority in that case, none dissented from this view. Manifestly there is nothing in our conclusion here reached that will in the least impair the effectiveness of the facilitating act in so far as it looks to the prevention of fraud and mistake in the exercise by the people of this constitutional right.

There are in the facilitating act four provisions which it is claimed argue against our conclusion. The argument that our conclusion is out of harmony with the provisions of § 12 (Id., § 4971-12) above quoted, authorizing the secretary to refuse to file a petition unless it appear to bear the requisite number of signatures, we think is answered by our observations already made.

It is further argued that our conclusion is out of harmony with the provision of § 11 (Id., § 4971-11) above quoted, requiring the filing with the petitions of detailed statements of expenditures incident to the procuring of signatures to petitions and promoting or bringing about a referendum. It is conceded that this was done upon the filing of these petitions. We see no reason why this cannot be done each time petitions are filed within the ninety days following the adjournment of the legislature, and the fact that the secretary must require

the filing of such an account before receiving petitions manifestly does not prevent him from requiring it each time petitions are filed.

It is further argued that our conclusion is not in harmony with the provision of § 14 (Id., § 4971-14) above quoted, relating to the detaching of the sheets containing the signatures and attaching them to one or more printed copies of the petitions and measure and binding them in volumes for the convenience of canvassing upon the filing of the petitions. Like the matter of filing the statement of expenditures mentioned, we see no reason why this may not be done at the time each filing is made within the ninety days following the adjournment of the legislature.

It is further argued that our conclusion is out of harmony with the provision of § 13 (Id., § 4971-13) above quoted, authorizing the secretary of state to destroy the petitions which are submitted to him and found upon his preliminary examination not to contain the requisite number of signatures to call for a referendum. Counsel seem to assume that this has reference to the destruction of petitions found to be insufficient by reason of lack of sufficient number of signatures of legal voters after the secretary has finally determined such insufficiency. But we think it has no reference to the destruction of petitions which are received and filed by him. Therefore, when these additional petitions were tendered for filing with the secretary, there were in his possession the petitions filed on June 4, for the purpose of final determination by him of the question of the sufficiency of the number of signatures obtained to call for a referendum. When the additional petitions were submitted for filing on June 6, it was in effect a demand for the filing of such additional petitions, and a refiling (if necessary) as of that date of the petitions submitted on June 4, and for the consideration of all the petitions *as one petition.* This, we think, the proponent Williams, or any other signer of any of the petitions, had the right to have done.

We conclude that both the language and the spirit of the constitution and the facilitating act call for an affirmance of the judgment of the superior court. The decision of the supreme court of Arkansas in *Hammett v. Hodges*, 104 Ark. 510, 149 S. W. 667, deals with a problem much like that here involved, wherein the views in that court are expressed quite in harmony with our conclusion here reached.

The judgment is affirmed.

MOUNT, HOLCOMB, FULLERTON, and CHADWICK, JJ., concur.

MORRIS, J. (dissenting)—I am unable to concur in the majority view, and briefly state my reasons.

The sufficiency of the petition is to be determined by the constitution and facilitating act, neither of which permits the filing of additional or supplemental petitions. I agree that as many petitions may be filed as there are persons desiring to file them, but the plain construction of both constitution and statute is that each petition must be complete in itself. When Williams filed his first petition, his rights were exhausted. If the petition thus filed was defective or wanting in any requirement, petitions subsequently filed by himself or others cannot be tacked onto the first petition to cure or amend its defects. The facilitating act must be read as a whole in the light of the orderly procedure it purposed to effect. When so read, its provisions plainly place no duty upon the secretary of state to file any petition until upon examination it appears to meet the requirements of the facilitating act as to the requisite number of signatures of legal voters. The secretary of state is not required to examine every paper filed in his office to ascertain whether in the aggregate they contain the necessary number of names. He is to examine that, and that only, which under the statute is filed as a petition, and when so filed and so examined, his duty is at an end.

There being no duty imposed by the law, it follows that the decree cannot compel the secretary of state to act. An

enlargement of these views might make my position plainer. As here stated they will, however, be sufficient to indicate my reasons for dissent.

ELLIS, C. J., and MAIN, J., concur with MORRIS, J.