[No. 25247. *En Banc.* August 25, 1934.]

ROBERT R. EDWARDS, *Appellant*, v. ERNEST N. HUTCHINSON, *as Secretary of State, Respondent.*[1]

*James P. Neal, Allen, Froude & Hilen, Welts & Welts, Theodore B. Bruener, Thomas S. Grant,* and *Welsh & Welsh,* for appellant.

*The Attorney General, E. P. Donnelly* and *W. A. Toner, Assistants, Bogle, Bogle & Gates, Stanley B. Long, Howard A. Hanson,* and *John F. Dore,* for respondent.

TOLMAN, J.—Robert R. Edwards, the plaintiff below, has appealed from a judgment dismissing his ac-

[1]Reported in 35 P. (2d) 90.

tion after the sustaining of a demurrer to his complaint and his refusal to amend. The question before us is whether or not the complaint states a cause of action.

By his complaint, the appellant alleges that he is a citizen and taxpayer of this state and a fisherman by occupation, duly licensed as such, and that he will suffer direct, special and pecuniary injury, peculiar to himself and those similarly situated, differing from that suffered by the general public, if the proposed initiative measure, No. 77, is enacted into law, which is entitled:

"An Act relating to fishing; prohibiting the use of fish traps or other fixed appliances for catching salmon and certain other fish within the waters of the state of Washington; prohibiting the taking or fishing for salmon and certain other fish within a certain area therein defined and created, by any means except by trolling, regulating trolling in such area, and permitting the operation of gill nets therein under certain conditions; providing for open and closed seasons; prohibiting drag seines and limiting the length of gill nets in the Columbia River; prescribing penalties; and repealing all laws in conflict therewith."

By this action, he seeks to enjoin the secretary of state from canvassing the names signed to the initiative petition, already filed, and certifying the measure for submission to the voters.

The grounds alleged for the purpose of showing a right to injunctive relief are, speaking generally, that corrupt and fraudulent practices have been indulged in pursuant to a conspiracy by the proponents of the initiative measure, by means of which they have deceived and deluded many persons into signing the petition without their knowing the nature of the proposed measure, and all in direct violation of the law and of the public policy of this state. In detail, it is charged that solicitors were hired for the purpose of circulat-

ing the petitions, and were paid a cash consideration and other gratuity and rewards therefor; and, to conceal the wrong, that such hired solicitors have filed affidavits containing false and fraudulent statements to the effect that no pay had been received by them. It is further charged that, pursuant to the same conspiracy and with the same intent and purpose, the warning which the law requires to be placed at the top of each sheet of an initiative petition has in many instances been covered up and concealed, the title to the proposed act has not been displayed as the law requires, and that the purported statement of expenditures filed with the secretary of state is false and fraudulent, in that it omits, denies or conceals the receipt of contributions and the names and addresses of many persons who contributed money and the names and addresses of persons to whom money has been paid, all in direct violation of the statutory law.

Further, it is charged that the proponents of the initiative measure have knowingly caused grossly false misstatements of facts to be published in the newspapers, and in advertisements, bills, circulars and cards, all for the purpose of deceiving the public and in an attempt to fraudulently induce voters to sign the initiative petition, and that, except for these unlawful, dishonest, fraudulent and deceptive practices, sufficient signatures could not have been obtained to the initiative petition.

It is further alleged that these petitions have been filed with the secretary of state, and that he will proceed to canvass and check the signatures thereto, at great expense to the taxpayers, and that, in doing so, he will act without knowledge of the fraud inherent in the petitions or of the illegality of the methods used in procuring signatures; and therefore an emergency exists requiring the intervention of a court of equity.

To this complaint, a demurrer was interposed, but apparently before it was argued or disposed of, a number of interested parties were, by the court, permitted to intervene, many of them having an interest common with the appellant; and their complaints in intervention are, speaking generally, along the same line. Others who were permitted to intervene took a position antagonistic to that of the appellant, and demurred to his complaint.

It will be observed that, prior to the bringing of this action, the petition had been filed with the secretary of state, and that the appellant seeks only to enjoin the canvassing of the signatures and the certifying of the measure.

The chief reasons urged in support of the judgment of the trial court are based upon the statute.

Rem. Rev. Stat., § 5408, requires the secretary of state, in the event that the petition bears the requisite number of signatures of legal voters, to accept and file it; otherwise, to reject it. If such a petition be rejected, a review by the courts is authorized by § 5409, but the statute gives no right to review the act of accepting and filing the petition.

By Rem. Rev. Stat., §§ 5411, 5414 and 5415, it is made the duty of the secretary of state, after such filing, to canvass and count the names of the certified legal voters upon such petition, and if it bears the requisite number, to certify the measure to be placed on the ballot.

Section 5413 provides that any citizen dissatisfied with the determination of the secretary of state as to the requisite number of legal signatures may apply to the courts for a review. Hence, it appears that the statute law, so far as it relates to a submission of the measure, is concerned only with the requisite number

of signatures of legal voters, and provides for a review by the courts of that question only.

Very plainly, it was the legislative purpose that the proposed measure, if it meets the test as to legal signatures, shall be submitted to the voters.

Since the secretary of state has not yet made his official determination as to the signatures of legal voters upon the petition under attack, that question is not before us in this case, and may still be reviewed, as the statute permits, when the secretary of state shall have acted.

Appellant earnestly urges that the extraordinary equitable powers of the court should be exercised to the end that popular government be rescued from the slough into which it has fallen through the machinations of selfish interest; but, much as we sympathize with that viewpoint and deprecate the use of methods such as are here charged, we see no possibility of granting the desired relief without disregarding all precedent and usurping political powers which have never yet been granted to or assumed by the courts.

The charges reduced to simple terms are but two. One, that paid workers have secured the signatures of legal voters. The law forbids the employment of paid workers. Rem. Rev. Stat., § 5428, makes it a criminal offense to hire or be hired for that purpose, but nowhere in the statute do we find a word or a line which invalidates the signature of a legal voter because it was obtained by the solicitation of a paid worker. Hence, notwithstanding the fact that the paid worker has violated the law, is guilty of a misdemeanor and liable to the penalties provided for such an offense, yet still the fact remains that a legal voter has signed the petition, and his signature must be counted.

The second charge is that, in various ways, the

voters have been deceived. Perhaps a legislative assembly, which is the judge of the qualifications of its own members, might take cognizance of such a charge; but if the courts were to assume jurisdiction over such matters, they would find themselves busy indeed.

Ever since popular elections were instituted, in every one held, some one, perhaps many voters, have been deceived, and so long as the political field remains free and open, as it should and must if we are to have free popular government, there is no way to prevent prejudices being appealed to; and voters to a greater or less degree will always be deceived.

Manifestly, the courts cannot undertake to set aside elections or to interfere with the action of electors upon the theory that someone has been deceived. Attempts to deceive can only be met by publicity and a campaign of education. The courts are powerless, or, if not powerless, an attempt to exercise power would result in confusion worse confounded. These views, we think, are supported by the great weight of authority.

The principle here involved has been before this court in other cases. In *State ex rel. Harris v. Hinkle,* 130 Wash. 419, 227 Pac. 861, it is said:

"An examination of the petition filed with respondent to ascertain if it is in proper form for filing, complying with the formalities of the law as to its form and contents, and to ascertain if it has a sufficient number of signatures on the face of the petition to entitle it to be filed, involve administrative acts and matters of discretion. As to them this court would not attempt to regulate the conduct of respondent by an extraordinary writ in advance of the act of the secretary, but would only attempt to rectify any erroneous, capricious, or arbitrary act after it had been made under the provisions of the law relating to appeals, or some of the extraordinary remedies provided in the law."

In *State ex rel. Case v. Superior Court,* 81 Wash. 623, 143 Pac. 461, Ann. Cas. 1916B, 838, very similar questions were considered and it was there said:

"In approaching the question of the power of the secretary and of the courts in determining questions arising incidental to the submission of an initiative measure to the voters, it is to be remembered that we are dealing with a political and not a judicial question, except only in so far as there may be express statutory or written constitutional law making the question judicial."

And again:

"However, the grounds of the decisions of the secretary and of the superior court upon the question of the fraudulent signing of these names, and the rejection thereof by them, we regard as of no consequence whatever here, since we have arrived at the conclusion that neither the secretary nor the superior court had any power to determine that these names were not the valid signatures of legal voters, that question having, by express provision of the law, been committed for decision to the specified local certifying officers, and there being no provision whatever in the law authorizing a review of their decision by the secretary. He having no such power of review, the superior court cannot have; in any event, in this proceeding, it being manifest, as we view the law, that it is the rulings and decisions of the secretary on questions which are within his power to decide, and none other, that the courts are authorized to review."

And still further:

"The penal provisions of this law are very severe; set forth in detail and with manifestly great care. They are directed to the signers of petitions, the certifying local officers, and even those who circulate petitions soliciting signatures thereon for pay. So far as safeguarding the operation of a law by severe and painstaking prescribed penal provisions is concerned, this law has been, we think it safe to say, seldom exceeded in this respect. . . . Surely these provi-

sions evidence an intent on the part of the legislature to make them the only safeguards looking to the prevention of fraud, forgery, and corruption, in the exercise of this constitutional right by the people, except in so far as the legislature has provided for correction of erroneous rulings and decisions by officers having to do with the execution of the law. The question being inherently political, the legislature had the right, and evidently intended to provide, these penal provisions as the sole safeguards for the proper operation of the law, except wherein it has specifically provided other safeguards.''

The rule thus announced was approved and followed in *State ex rel. Evans v. Superior Court*, 168 Wash. 176, 11 P. (2d) 229. In *State ex rel. Howell v. Superior Court*, 97 Wash. 569, 166 Pac. 1126, this court laid down the rule that the sponsor of such a petition was not the agent of any of the signers to the extent that his offenses would bind the signers or invalidate their signatures.

Appellants seem to rely upon language used in the cases of *State ex rel. Berry v. Superior Court*, 92 Wash. 16, 159 Pac. 92; *Gibson v. Campbell*, 136 Wash. 467, 241 Pac. 21; *McCush v. Pratt*, 113 Wash. 7, 192 Pac. 964; and *State ex rel. McCauley v. Gilliam*, 81 Wash. 186, 142 Pac. 470, but these were all cases regularly brought under the provisions of the statute; and, as we see it, nothing said in any of those cases bears upon the present question.

Others of our cases are cited and discussed, but none has a sufficient bearing to warrant analysis or to call for a pointing out of distinguishing features. Some authorities from other jurisdictions are also cited by each of the parties hereto, but a study of these reveals nothing sufficiently in point to warrant a discussion, which could have no clarifying effect.

588

The demurrers were properly sustained, and the judgment appealed from is affirmed.

ALL CONCUR.