[Nos. 34020, 34021. *En Banc.* October 13, 1956.]

THE STATE OF WASHINGTON, *on the Relation of Dewey C. Donohue et al., Petitioners,* v. EARL COE, *Secretary of State, Respondent and Relator,* THE LEAGUE OF WOMEN VOTERS OF WASHINGTON, *Intervener and Relator,* WILLIAM M. CLAPP *et al., Interveners,* THE SUPERIOR COURT FOR THURSTON COUNTY, *Charles T. Wright, Judge, Respondent.*

DEWEY C. DONOHUE *et al., Petitioners,* v. EARL COE, *Secretary of State, Respondent and Relator,* THE LEAGUE OF WOMEN VOTERS OF WASHINGTON, *Intervener and Relator,* WILLIAM M. CLAPP *et al., Interveners,* THE SUPERIOR COURT FOR THURSTON COUNTY, *Charles T. Wright, Judge, Respondent.*[1]

[1]Reported in 302 P. (2d) 202.

*The Attorney General, John S. Robinson* and *Andy G. Engebretsen, Assistants,* and *George N. Prince,* for relators.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for petitioners.

*William M. Clapp, pro se.*

*Brodie & Fristoe,* for interveners Washington State Farm Bureau Federation *et al.*

HILL, J.—We are here concerned with two attempts, one by a common-law proceeding and the other based upon the initiative statute (Laws of 1913, chapter 138, p. 418, as amended [*cf.* RCW 29.79]), to prohibit the secretary of state from certifying an initiative measure to the ballot. The superior court for Thurston county entered an order on the first day of October, 1956, in the proceeding based upon the statute, enjoining the secretary of state from certifying the initiative measure "for inclusion on the ballot to be voted on on November 6, 1956"; and in the common-law action he entered, on the same date, an order directing the issuance of a writ of prohibition having the same effect as the injunction.

The secretary of state, by writ of certiorari, brings these orders before us for review. Those seeking the relief granted by the superior court will be referred to herein as the petitioners.

Initiative No. 199 is an attempt to implement Art. II, § 3, of our state constitution, which requires that, after each enumeration of the inhabitants of the state made by authority of the United States,

". . . the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants. . . ."

The legislature has never carried out this constitutional mandate. The only redistricting since statehood (1889) was by virtue of an initiative measure enacted in 1930. Now, twenty-six years later, another initiative measure has been sponsored for that purpose. The requisite number of legal voters have signed the petitions.

■ It is unnecessary at this time to state the provisions of the proposed measure or to consider whether it would be valid if approved by the people. *State ex rel. Griffiths v. Superior Court* (1916), 92 Wash. 44, 159 Pac. 101, 162 Pac. 360.

Our constitution states that

". . . the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature. . . ." Art. II, § 1, as amended, Amendment 7.

Also:

"The first power reserved by the people is the initiative." Art. II, § 1, as amended, Amendment 7 (§ 1(a)).

After providing for the initiative and referendum by petition, the constitutional amendment states:

"All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation." Art. II, § 1, as amended, Amendment 7 (§ 1 (d)).

The constitution enumerates only three requisites to the adoption of an initiative directly by the people (without the intervening step also provided for of submission to the legislature): (1) "Ten per centum, but in no case more than fifty thousand, of the legal voters" must sign petitions which include the full text of the measure proposed (Under the constitution, the legal voters who sign the petitions are the ones who "propose" the measure); (2) the petitions must be filed with the secretary of state not less than four months before the election at which the measure is to be voted upon; (3) the measure proposed, to be approved, must re-

ceive a majority of the votes cast thereon, and the vote cast upon such measure must equal one third of the total votes cast at such election. Art. II, § 1, as amended, Amendment 7 (§ 1 (a), (d)).

Anything added to these constitutional requisites must be by legislation "enacted especially to facilitate" the operation of the reserved right of the people to initiate legislation. This was recognized by the legislature in the enactments here considered. Laws of 1913, chapter 138, p. 418, and amendments thereto [cf. RCW 29.79]. The title of the 1913 enactment states that it is "AN ACT to facilitate the operation of the provisions of section 1 of article II of the constitution relating to the initiative and referendum. . . ."

The proceeding here under consideration that is based upon the statute is predicated upon the allegations that

"Petitioners are citizens, residents and taxpayers of the State of Washington and are qualified voters therein, and they are dissatisfied with the determination of the Secretary of State that the petition in support of Initiative No. 199 contains the requisite number of signatures of legal voters."

This brings them within the language of § 17 of the statute [cf. RCW 29.79.210], i.e.:

"Any citizen who shall be dissatisfied with the determination of the secretary of state that the petition contains or does not contain the requisite number of signatures of legal voters may, within five days after such determination, . . ."

appeal to the superior court for Thurston county. However, the bill of particulars which they subsequently filed made it clear that they did not question the number of legal voters who signed the petitions but, instead, were questioning the action of the secretary of state in accepting and filing the petitions containing the signatures of the registered voters and the statements concerning contributions and disbursements required by § 11 of chapter 138 [cf. RCW 29-.79.120, .130, .150].

There are only three circumstances under which the stat-

ute gives the courts any supervision over the manner of the exercise of the legislative power of initiative reserved to the people:

*First*: Section 3 of the 1913 enactment [*cf.* RCW 29.79-.060] provides that, if the persons sponsoring the initiative are dissatisfied with the ballot title as formulated by the attorney general, they may appeal from his decision to the superior court for Thurston county, stating their objections. That court's determination of the ballot title shall be final.

*Second*: Section 11 [*cf.* RCW 29.79.130] provides that the sponsors of the proposed initiative shall submit the signed petitions to the secretary of state, together with a statement concerning contributions and expenditures. Section 12 [*cf.* RCW 29.79.150] deals with the examination of the petitions by the secretary of state to determine whether they "appear to be in proper form and to bear the requisite number of signatures of legal voters, . . ." and his acceptance and filing thereof or his refusal to file the same. Section 13 [*cf.* RCW 29.79.160, .170] provides that, *if the secretary of state refuses to file the petitions*, the person submitting the same for filing may appeal to the superior court for Thurston county for a citation requiring him to bring such petitions before the court, and for a writ of mandate to compel him to file the same. A decision by that court granting the writ is final; the refusal to grant may be reviewed by this court on a writ of certiorari. (It is the acceptance and filing of the petitions and of the statements referred to in § 11 of which the relators really complain, but no review is provided if the secretary of state accepts and files the petitions.)

*Third*: Sections 15, as amended [*cf.* RCW 29.79.200], and 16, as amended [*cf.* RCW 29.79.240], relate to the preparation of initiatives for submission to the legislature and cover the details of canvassing and counting the names of certified legal voters on the petitions. Section 17 [*cf.* RCW 29.79.210] provides that any citizen "dissatisfied with the determination of the secretary of state that the petition contains or does not contain the requisite number of signatures of legal voters" may appeal that determination to the superior court for Thurston county, and that court can direct or enjoin

the certification of the measure to the legislature. This court may review the action of the superior court on a writ of certiorari. Section 18, as amended [cf. RCW 29.79.220], makes the procedures in §§ 15, 16, and 17 applicable to an initiative petition for submission to the people.

It is to be noted that the reviews provided for in §§ 3 and 13 can be sought only by those interested in getting the initiative measure onto the ballot, and the only review that "any citizen" can invoke is provided for in § 17 and is limited to the determination of whether a sufficient number of legal voters have signed the petitions. (The only other review of any action by the secretary of state under the act in question is in § 26 as amended [cf. RCW 29.79.360] which relates to the publication of arguments for and against any measure. He may refuse to file an argument which in his opinion contains "any obscene, vulgar . . . matter. . . ." The persons submitting such argument may appeal to a board of censors, and the decision of a majority of that board is final.)

█ The petitioners express reliance on the provisions of §§ 17 and 18, but, as heretofore pointed out, they are actually trying to have reviewed, not the issue of whether the petitions contain the signatures of the requisite number of legal voters, but the issue of what the secretary of state did under §§ 11 and 12, as to which there is no review if he accepts and files the petitions, as he did here. The statute clearly indicates the areas within which the courts can review the determinations of the secretary of state, and the matters urged by the petitioners do not come within any of them.

As soon as the bill of particulars made apparent the actual ground of attack, the secretary of state's demurrer should have been sustained, on the ground that the court had no jurisdiction, and the superior court erred in not so doing.

We would interpolate the further thought that the legislative determination to limit the scope and extent of the superior court review, and a still further limitation on appellate court review, is in the interest of facilitating the

operation of the reserved legislative power and is justified by the practicalities of the situation. All of the steps outlined in the statute are to be carried out within four months before the election, actually in less time than that, because the certification to the county auditors must be at least two weeks before the election.

In a discussion of the constitutional provisions and the 1913 statute, which, as amended, is now under consideration, we have said:

"There is strongly suggested, in the language of the constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be *facilitated*, and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right." *State ex rel. Case v. Superior Court* (1914), 81 Wash. 623, 632, 143 Pac. 461, Ann. Cas. 1916B, 838.

■ The demurrer to the common-law proceeding should likewise have been sustained, for the reason that nothing was alleged therein that gave the superior court any jurisdiction to interfere with the legislative processes of the initiative as reserved to the people. Any interference with the secretary of state in the performance of the duties imposed upon him by the constitution and the statute relative to the handling and processing of initiatives can be justified only by express statutory or constitutional provisions making the question judicial, or if he acts without authority or in an arbitrary and capricious manner inconsistent with the spirit and intent of the statute or the constitutional provisions. We believe that all of our cases in which court interference has been approved fall within those exceptions. The present case does not.

As an example of interference based upon a constitutional provision making the question judicial, see *State ex rel. Evich v. Superior Court* (1936), 188 Wash. 19, 61 P. (2d) 143. In that case, the secretary of state was prohibited from certifying an initiative to the county auditors for printing upon the official ballot, there having been no showing that

the number of legal voters required by the constitution had signed the petitions for the initiative.

As an example of interference based upon an express statutory provision, see *State ex rel. Case v. Superior Court, supra.*

As an example of interference based upon complete lack of authority by the secretary of state for the course he was pursuing, see *State ex rel. Harris v. Hinkle* (1924), 130 Wash. 419, 227 Pac. 861.

The limitation on judicial authority is well expressed in *State ex rel. Case v. Superior Court, supra* (p. 633):

"In approaching the question of the power of the secretary and of the courts in determining questions arising incidental to the submission of an initiative measure to the voters, it is to be remembered that we are dealing with a political and not a judicial question, except only in so far as there may be express statutory or written constitutional law making the question judicial. Speaking generally, it may be said that the legislature might have committed wholly to administrative officers all questions arising under the law incidental to the submission of initiative measures to the people, without any right of review in the courts whatever, except, possibly, pure questions of law."

In *Edwards v. Hutchinson* (1934), 178 Wash. 580, 35 P. (2d) 90, the plaintiff sought an injunction to prevent the secretary of state from canvassing and counting the names signed to certain petitions he had accepted and filed, and from certifying the measure for submission to the voters. It was alleged that solicitors had been hired to circulate the petitions

". . . and that the purported statement of expenditures filed with the secretary of state is false and fraudulent, in that it omits, denies or conceals the receipt of contributions and the names and addresses of many persons who contributed money and the names and addresses of persons to whom money has been paid, all in direct violation of the statutory law."

These allegations present a much stronger case for interference than the one now before us. The superior court held that no cause of action warranting interference was

stated, and sustained a demurrer, and we affirmed. The *Edwards* case clearly supports the conclusion we have reached.

There are, no doubt, other matters alleged in the common-law action which may again be urged if the initiative is approved by the people and subjected, as any legislation can be, to a court test as to its constitutionality. As we said in *State ex rel. Griffiths v. Superior Court, supra* (p. 47):

"With the ultimate question of the validity of this proposed legislation, we have no present concern. Courts will not determine such questions as to contemplated legislation which may, perchance, never be enacted."

The superior court in the present proceedings held, and properly so, that as to the allegations raising such issues the demurrers should be sustained.

We are impressed with the secretary of state's contention that the petitioners in the common-law action have no capacity to maintain it. We have, however, assumed that they do have, and we rest our holding reversing the superior court upon the proposition that, under the facts stated, the superior court had no jurisdiction to grant the relief requested.

This matter is remanded to the superior court for Thurston county with instructions that the order granting the writ of prohibition against the secretary of state in the common-law proceeding be set aside and the writ be quashed; and that the order in the statutory proceeding enjoining the secretary of state "from certifying initiative measure 199 for inclusion on the ballot to be voted on on November 6, 1956," be set aside. Both proceedings are to be dismissed.

DONWORTH, C. J., MALLERY, FINLEY, WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.

SCHWELLENBACH, J., concurs in the result.