CITIZENS AGAINST LEGALIZED GAMBLING et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS et al., Defendants;

District of Columbia et al., Intervening Defendants.

Civ. A. No. 80–2087.

United States District Court, District of Columbia.

Oct. 7, 1980.

Winfred R. Mundle, Silver Spring, Md., for plaintiffs.

William H. Lewis, Washington, D. C., for D. C. Bd. of Elections & Ethics.

James C. McKay, Jr., Asst. Corp. Counsel, Washington, D. C., for intervening defendant, District of Columbia.

James Ostmann, Washington, D. C., for intervening defendant, D. C. Committee on Legalized Gambling.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This November, an initiative which has been certified by the Board of Elections and Ethics of the District of Columbia and which will provide an opportunity for voters to approve or disapprove certain forms of legalized gambling is scheduled to appear on the ballot. Those ballots are now being printed. Plaintiffs oppose this initiative, believing that gambling is not right for the District of Columbia. They attack on constitutional grounds the procedures under which initiatives are approved, challenging in particular the legality of D.C.Code § 1–1116(o) (Supp. VII 1980), which they claim denies them their First Amendment rights and their right to equal protection under the Constitution. Plaintiffs also contend that Board Rule 1607.9, 27 D.C.Reg. 3234 (July 25, 1980), is illegal in that it fails to disqualify signatures on the petition that were obtained by circulators who were not registered voters and who thus are in violation of D.C.Code § 1–1116(h) (Supp. VII 1980).

There have been cross–motions for summary judgment and various motions to dismiss. The matter is fully briefed and a hearing on the motions has been held. The District of Columbia has intervened as a defendant to support the validity of the initiative law.

The Court is faced at the outset with a serious challenge to its jurisdiction. Plaintiffs contend that the Court has jurisdiction under 28 U.S.C. § 1331 (1976), which requires that the matter in controversy exceed the sum or value of $10,000. But plaintiffs have totally failed to make the showing contemplated by *Gomez v. Wilson*, 477 F.2d 411, 421 n.56 (D.C.Cir.1973), to demonstrate that the $10,000 requirement is met. *Cf. United States Jaycees v. Superior Court*, 108 Wash.L.R. 1689, 1694 (D.D.C., filed June 20, 1980). Nonetheless, the case involves fundamental constitutional rights, *cf. West End Neighborhood Corp. v. Stans*, 312 F.Supp. 1066, 1068 (D.D.C.1970), and it is impossible to say "to a legal certainty," *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 346, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977), that the jurisdictional amount could not be reached. Furthermore, the late date of this litigation means that there is no other avenue open to plaintiffs to seek redress of their grievance prior to the scheduled vote in November. The Court will not dismiss this litigation for failure to demonstrate the jurisdictional amount.

Furthermore, while this is a matter that should preferably be considered by the local courts, abstention in this case would, as a practical matter, end plaintiffs' challenge without any possibility of a court reaching the merits in time to provide a remedy. Accordingly, as the Court indicated at the oral hearing, it will accept jurisdiction in order to reach the merits, despite a strong belief that this is a matter better suited to review by the local courts.

Before discussing the merits of plaintiffs' claims, it is important to outline the petition procedure for an initiative as it is established by D.C.Code § 1–1116 (Supp. VII 1980). Any voter may submit a proposed initiative to the Board of Elections. Once the proposal has been assigned a name and a number, and a summary of the initiative has been approved by the proposer and the Board of Elections, then the proposer has 180 days in which to obtain the signatures necessary to have the initiative placed on the ballot. The petition must be signed by five percent of all registered voters in the District, and, to ensure that there is broad-based support, the names submitted must include at least five percent of the registered voters in five of the city's eight wards.

Once the names are submitted, and once it has been determined that the subject of the proposed initiative is appropriate for an initiative vote, *cf. Convention Center Referendum Comm. v. District of Columbia Board of Elections and Ethics*, No. 79–857 (D.C., filed Sept. 3, 1980), then the Board of Elections has 30 days in which to certify whether or not the petition requirement has been met. D.C.Code § 1–1116(*o*) (Supp. VII 1980). "This certification may be by a bona fide random and statistical sampling method," or by an actual check of all signatures.

Three days after a petition is submitted, the Elections Board must post the petition for 10 days for public inspection. During this 10–day period, any voter may challenge the validity of the petition. Plaintiffs view this 10-day period as an unjustifiably brief time in which to mount a challenge to a petition and claim it infringes plaintiffs' right to associate for the purpose of expressing their opposition to the proposed initiative.[1]

Plaintiffs have attempted to put their challenge within the rubric of the "ballot access" cases. *See, e. g., Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Anderson v. Morris*, 500 F.Supp. 1095 (D.Md.1980), *affirmed*, 636 F.2d 55 (4th Cir. 1980).

1. In the case before the Court, initiative supporters submitted 24,109 signatures, almost double the 12,681 valid signatures required to have the initiative certified. During the 10–day challenge period, plaintiffs challenged 9,729 signatures on various grounds and another 5,042 signatures on the specific ground that the circulators of those petitions were not registered voters.

■ But this is not a ballot access case. Plaintiffs can show no right to challenge the placement of an initiative on the ballot other than the right established by statute.[2] A state has a right to ensure that an initiative has a wide–base of support before it is considered by the electorate, *cf. Illinois State Board of Elections v. Socialist Workers Party, supra,* 440 U.S. at 184–85, 99 S.Ct. at 990–91; *Moore v. Board of Elections,* 319 F.Supp. 437, 441 (D.D.C.1970) (three–judge court), but that right does not necessarily extend to individual groups having an interest in the subject matter of the initiative.

■ Moreover, the concerns relevant to the ballot access decisions are not relevant here. Plaintiffs are not concerned with *increasing* voters' opportunity to consider alternative candidates or positions; plaintiffs want to *restrict* determination of an issue by the voters. This is particularly inappropriate in the case of an initiative. Initiative legislation should be liberally construed to extend its operation rather than to reduce it. *See, e. g., Convention Center Referendum Comm. v. District of Columbia Board of Elections and Ethics, supra,* at 30 (Gallagher, J., dissenting); *Warner v. Kenny,* 27 Cal.2d 627, 165 P.2d 889, 890 (1946); *cf. Kamins v. Board of Elections,* 324 A.2d 187, 192 (D.C.1974).

The fact that this is not a ballot access case does not mean that there are no First Amendment concerns. Plaintiffs have a right to associate for the advancement of political beliefs–in this case, for the advancement of the position that legalized gambling would be wrong for the District of Columbia–and the 10–day limit on challenges burdens plaintiffs' exercise of its rights by restricting the time in which it can mount an effective challenge. The statute here at issue is a content–neutral statute, passed for purposes unrelated to the suppression of expression, that nonetheless has the indirect result of burdening protected activity to some extent. As such,

it is subject to scrutiny under the First Amendment.

While the parties have cited, and the Court has uncovered, no decisions that serve as a satisfactory analogy for this case, the Court has concluded that the statute passes First Amendment muster.

The activity infringed here is very narrow; it is the right to oppose an initiative at the point after petitions have been submitted and before the initiative has been certified for a vote. This opposition period is not a traditional public forum for expression. Numerous alternative opportunities for expression still exist. Challenges can be made through public appeals before the petition period begins, while signatures are being sought, and, most importantly, in the election process itself. Opposition also can be expressed through the political process by seeking legislation that would limit the effects of the initiative proposal.

Against this slight burden on First Amendment activity, the interests of government that are advanced by the statute must be considered. The Board of Elections has only 30 days in which to certify whether or not the petition requirement has been met. To extend the challenge period might well force the Board to take more than 30 days to certify the initiative. This would mean that the petition period would be further removed from the voting–and thus that the initiative would be less likely to serve its role as an effective tool for expression of the voters' interests. Furthermore, verification of the petition signatures does not depend on a challenge alone. The Board has an independent duty to assure sufficiency. The 10–day period for opponents cannot be viewed in isolation from the 30–day period during which the Board must complete all its work. It is reasonable to conclude that if opponents to an initiative present strong evidence of petition insufficiencies within the first 13 days of the 30–day period (by using the full 10–day span allotted opponents, following

---

2. In California, the state that is perhaps foremost in popularizing the initiative, there appears to be no right of opponents to challenge

election board proceedings to certify initiative petitions. *See* Cal.Elec.Code §§ 3520–3524 (West 1977 & 1980 Supp.).

the initial 3–day period prior to posting), this may well affect the Board's decision as to how carefully the petition will be verified. Extending the opponents' challenge period would jeopardize the Board's ability to complete the verification proceedings within the allotted time.[3]

■ In sum, the inhibition of First Amendment activity from this content–neutral statute is insubstantial, and there are numerous alternative opportunities for expression. There are significant justifications for the statute. Under these circumstances, the statute must be upheld. *Cf.* L. Tribe, American Constitutional Law § 12–20 at 684 & n.10 (1978) (citing cases).

Plaintiffs also have attacked the 10–day period on equal protection grounds. Although the 10–day period is common to all voting challenges–the recall procedure, the nomination procedure, and the initiative procedure–plaintiffs contend that the difficulties faced by an opponent in the initiative proceeding are greater[4] and that the 10–day requirement thus treats initiative opponents more harshly.

■ This claim is without merit. Plaintiffs have not shown–and indeed, could not show–that they are in any sort of protected class. There clearly is a rational basis for the 10–day period, as discussed above. The time period bears a substantial relationship to the goal of providing orderly elections and furthers a legitimate government interest. The fact that opponents to another form of ballot contest may, in practice, have an easier time in their challenge does not render this statute void on equal protection grounds.

Finally, plaintiffs have challenged Board Rule 1607.9, 27 D.C.Reg. 3234 (July 25, 1980), which permits the Board to consider as valid a signature on a petition that has

been solicited by a person who has not complied with the provisions of D.C.Code § 1–1116(h) (Supp. VII 1980). Although there are criminal penalties for circulating a petition without complying with the statute, Rule 1607.9 states that failure of a circulator to comply·does not invalidate the signatures.

■ There does not appear to be any local authority determining the validity of the Board regulation, so, of necessity, the parties have offered cases drawn from other jurisdictions. The Court finds, after considering the relevant decisions, that the rule is valid. Where petitions have been invalidated because of the failure of the person circulating the petition to comply with the laws, the reasoning generally seems to be that the omission raises doubts as to the validity of the signatures themselves. *See, e. g., In re Levowitz,* 221 N.Y.S.2d 703 (1961) (statement of witness to signatures false, casting doubt on authenticity of signatures); *Clawson v. Wilgus,* 107 Ohio App. 460, 160 N.E.2d 294 (1957) (person attesting to petition did so falsely; no way to determine actual circulator). That is not the situation here. In this case, it is alleged that some of the circulators swore that they were registered voters, and yet they were not. But the name of the circulator is correct, and all necessary information is provided. To deny the persons who signed these petitions the chance to have those signatures count–solely because of misconduct by others that does not cast doubt on the signatures themselves–would force this Court to stand on form rather than substance. In this situation, the Court finds that noncompliance by the circulator need not–as a matter of law–invalidate any signature so long as the criminal sanctions are

---

**3.** It is significant to note that in the case now before the Court, the Board of Elections found–with 99 percent certainty–that the petitioners had gathered enough signatures to qualify the initiative for the ballot. *See* D.C.Ex.J. Thus it is highly unlikely that any extension of the challenge period would have resulted in plaintiffs achieving their goal of keeping the initiative off the ballot.

**4.** The initiative proceedings require more signatures–and thus there are more signatures to challenge. Also, in a recall, the Board of Elections verifies each signature without recourse to a statistical sampling, and thus opponents need not make this check.

pursued.[5] *Cf. Mosley v. Board of Elections,* 283 A.2d 210 (D.C.1971) (refusing to invalidate nominating petitions that omitted the initiative date); *Edwards v. Hutchinson,* 178 Wash. 580, 35 P.2d 90, 92 (1934) (refusing to invalidate signatures collected by circulators who were paid in violation of state law).

In view of the foregoing, D.C.Code § 1–1116 (Supp. VII 1980) and Board Rule 1607.9 must be found valid against the attacks posed by plaintiffs. Defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The motions to dismiss are moot.

The Clerk of Court is directed to enter judgment for defendants. The complaint is dismissed.

So ordered.

---

**5.** The Board of Elections has forwarded to the United States Attorney the names of three persons who allegedly circulated petitions although they are not registered voters. The three individuals obtained a combined total of about 200 signatures. The individuals are subject to prosecution under D.C.Code § 1–1114(b)(3) (Supp. VII 1980). A copy of the letter from the Board of Elections was delivered to the Court.