[No. 19137. Department One. April 21, 1925.]

THE STATE OF WASHINGTON, *on the Relation of North-western Bond & Mortgage Corporation, Plaintiff,* v. J. GRANT HINKLE, *as Secretary of State, Respondent.*[1]

CORPORATIONS (5)—INDUSTRIAL LOAN COMPANIES—SALE OF BONDS —ARTICLES OF INCORPORATION—COMPLIANCE WITH STATUTES — CONSTRUCTION. A corporation organized to do a bond brokerage business, with power (a) to loan money on personal security, . . . and (c) to sell or negotiate written evidence of debt for the payment of money and to receive payment thereof in instalments or otherwise—two of the things covered by Rem. 1923 Sup., § 3862-8, relating to industrial loan companies—must comply with the provisions of the industrial loan act (Id., § 3862-1 *et seq.*), before it is entitled to file its application and obtain permit for the issuance of "income bonds" under the "Securities act," Rem. 1923 Sup., § 5853-1 *et seq.*

[1]Reported in 235 Pac. 359.

MANDAMUS (13)—WHEN LIES—SECRETARY OF STATE—ILLEGAL
PERMIT TO CORPORATION. Mandamus does not lie to compel the secretary of state to do the vain and useless thing of filing articles of incorporation which are not entitled to be filed, ɩn the theory that it is but a ministerial act.

Application filed in the supreme court January 13, 1925, for a writ of mandamus to compel the secretary of state to issue to relator a permit to sell its income bonds. Denied.

*James K. McDowall,* for relator.

*The Attorney General, R. G. Sharpe,* and *E. W. Anderson, Assistants,* for respondent.

TOLMAN, C. J.—Relator seeks by this action a writ of mandamus compelling the secretary of state to accept and file its application and issue to it a permit for the sale of its so-called "income bonds," under chapter 69, Laws of 1923, p. 207 [Rem. 1923 Sup., § 5853-1], known as the "Securities Act."

Respondent justifies his refusal to accept and file the application and issue the permit upon the ground that relator's application and articles of incorporation show it to be organized for, and that it is actually proposing to do business as, an industrial loan company, without having complied with chapter 172, Laws of 1923, p. 553 [Rem. 1923 Sup., § 3862-1], relating to industrial loan companies.

Relator is organized for the purpose of buying, selling and negotiating notes, commercial paper, mortgages, bonds, stocks, contracts upon real and personal property, and to engage in and carry on a general loan, mortgage, discount, and commercial-paper business, including the power to issue bonds and debentures, and to secure the same by pledges, deeds of trust or mortgages upon the whole or any part of its property, and to sell and pledge such bonds and debentures for cor-

porate purposes; and it is proposing to issue what it denominates its special income bonds in the aggregate sum of $2,500,000, such bonds to be sold upon a small cash payment, with deferred monthly payments running over a period of 127 consecutive months; the total sum to be thus paid in is capitalized and the grand total, including the amounts paid in and the estimated earnings thereof, is to be paid back in annual installments running over a period of ten years.

The question is whether the proposed plan of doing business brings the relator within the purview of the industrial loan companies act. That act provides for the creation, supervision, examination and dissolution of industrial loan companies; prohibiting certain acts, etc.; for the incorporation of such companies only when authorized by the supervisor of banking; and specifying the method of such incorporation and fees to be paid; for an investigation by the supervisor of banking as to the responsibility of the incorporators; the manner of doing business, etc.; and for his approval or refusal of the articles. It further provides that the supervisor of banking shall be satisfied that the corporation has the necessary paid-in capital and that it has complied with all requirements of the law before it is permitted to commence doing business. An industrial loan company is defined in § 1 of the act (Laws of 1923, p. 553) [Rem. 1923 Sup., § 3862-1], to mean, "any corporation which in the regular course of its business loans money and issues its own choses in action under the provisions of this act." And in § 8 (Laws of 1923, p. 558) [Rem. 1923 Sup., § 3862-8], it is provided that every corporation coming under the act shall have power:

"(a) To loan money on personal security, or otherwise, and to deduct interest therefor in advance at the rate of eight per cent per annum, or less. . . .

"(c) To sell or negotiate written evidences of debt for the payment of money at any time either fixed or uncertain, and to receive payments therefor in installments or otherwise, with or without an allowance of interest on such installments." Laws of 1923, p. 558, § 8, subds. a, c.

It is obvious that relator proposes, as part of its regular business, to do two of the things covered by the industrial loan companies act, which are perhaps most characteristic of such companies, namely, to loan money on personal or other security, and to sell and negotiate written evidences of debt for the payment of money at any time either fixed or uncertain, and to receive payment therefor in installments or otherwise. That it claims the right to exercise other and further powers is immaterial, since relator proposes, as a part of its regular business, and apparently as the principal part thereof, to borrow on its own choses in action $2,500,000, and with the money thus acquired to make loans, it is at once apparent that it ought to be supervised by the state; and the legislature, without doubt, in passing the industrial loan companies act, has intended to provide for such supervision for the protection of the investing public. The legislation is salutary and proper; the purpose to be effected is plain; and it seems clear that, if a corporation, by including in its articles other and further powers, may thus escape the supervision provided by the act, the act will be a nullity. Clearly, by its terms, the act is intended to be mandatory and not merely permissive, and consequently, any corporation seeking to do the kind of business which the act attempts to regulate, must comply with its provisions. Corporations are merely creatures of the state; the laws of the state become a part of their charter, and they must necessarily comply therewith as a condition precedent to carrying on the

business for which they are organized. Discussing a somewhat similar question, in the case of *State ex rel. Gorman v. Nichols,* 40 Wash. 437, 82 Pac. 741, it was said:

"It will be noticed that the powers of the proposed corporation as defined by its articles are almost, if not wholly, confined to an agency or trust business. It is true that the language used in the articles does not follow the language of the act of 1903, and does not include all the items or powers named in that act; but, in relation to the same subjects, the powers of the proposed corporations are substantially the same as the powers of trust companies organized under the act of 1903. It is unnecessary to point out the specific similarity, because a careful comparison readily discloses the fact. If trust companies could have been organized under the general provisions of Bal. Code, § 4250, prior to the act of 1903, such companies, except possibly such as are therein specifically named, cannot now be incorporated under those provisions; because the act of 1903 expressly provides that hereafter no corporation shall be organized for the purpose of carrying on a trust company business in the state of Washington except under this act. Holding, as we do, that the articles of incorporation offered to the secretary of state authorize a trust company business, and it being conceded that relators have not complied with the act of 1903 with regard to incorporation, it follows that the relators are not entitled to file the articles.

"Relators contend, however, that the duties of the secretary of state are purely ministerial, and that it is his duty to file and record the articles of incorporation as offered, and that the remedy of the state is by *quo warranto* proceedings. This same question was presented in *State ex rel. Osborne, Tremper & Co. v. Nichols,* 38 Wash. 309, 80 Pac. 462, and we there held that the secretary of state was under no duty to file articles not entitled to be filed, and that this court will not compel him to do a vain or illegal act."

The quotation just given covers also the duty of respondent, as secretary of state, in the premises, and,

since the record discloses that the relator has not complied with the loan companies act, the secretary was under no duty to accept its application and issue it a permit to sell its bonds, and, in the language just quoted, this court will not compel him to do a vain or illegal act.

The writ is denied.

BRIDGES, PARKER, MAIN, and ASKREN, JJ., concur.