[No. 33670. Department One. October 18, 1956.]

THE STATE OF WASHINGTON, *on the Relation of Ralph M. Close, Appellant,* v. A. R. MEEHAN *et al., Respondents.*[1]

[1] Reported in 302 P. (2d) 194.

*Rice, Morrison & Lake,* for appellant.

*B. A. Farley, Paul F. Schiffner,* and *Roland C. Wightman,* for respondents.

SCHWELLENBACH, J.—Since its incorporation, the city of Spokane has discharged its raw sewage into the Spokane river. The state department of health, by notice dated December 4, 1935, notified the city that a public nuisance existed in the Spokane and Columbia rivers resulting from such discharge of raw sewage, and ordered the city to abate the nuisance.

Subsequent thereto, the legislature enacted chapter 186 of the Laws of 1941, p. 529 (RCW 35.88.080), forbidding the city from depositing its sewage into the Spokane river and providing that the same should become a public nuisance which might be summarily abated by any court of competent jurisdiction.

April 15, 1946, the city council adopted ordinance No. C8500, consisting of eleven sections, which contained a comprehensive and detailed plan for the acquisition, construction, and installation of a sewage disposal system, and the method of its financing. Section 1 provided:

"Section 1: That, subject to the approval by the qualified electors of Spokane of the Proposition hereinafter described at a special election hereinafter ordered, there shall be acquired, constructed, and installed, or caused to be constructed and installed by the City of Spokane, a municipal sewage disposal system and facilities, the works of which, upon such acquisition, construction, and installation, shall be owned, operated, and controlled by the City of Spokane; which will consist of the following as additions to, and connected with, the municipally owned sewage system of Spokane viz:

"A series of intercepting sewers, as specifically described hereinafter, shall be constructed in and along the areas, places and streets as designated hereinafter; which said sewers will receive the sanitary sewage originating in the various areas tributary thereto and which can be sewered into and drained through such intercepting sewers; and said intercepting sewers, being connected and joined as specified hereinafter, will be constructed and extended to and into a

Primary Treatment Sewage Disposal plant. The Sewage Treatment Plant will include the necessary structures and equipment to provide for coarse screening, grit removal, preliminary sedimentation, disinfection with chlorine, separate sludge digestion, and vacuum drying of the sludge together with other necessary appurtenant work. Building space will be provided for administrative, laboratory, and repair work and storage for vehicles, tools, equipment, and materials, which plant will be constructed on the north side of the Spokane River in the Northeast Quarter (NE ¼) of Section Three (3) and the Northwest Quarter (NW¼) of Section Two (2), Township Twenty-five (25) North, Range Forty-two (42), E. W. M., Spokane County, Washington.

"The sewage originating in the various areas and territory served by said intercepting sewers will flow into and through said intercepting sewers into said Primary Treatment Sewage Disposal Plant and there be disposed of. Said intercepting sewers will be constructed and located as follows: [Then follow descriptions.] . . .

"and in order to pay for the cost and expense to the City of Spokane of the foregoing plan, which is for, and shall include, capital purposes only, the City of Spokane shall sell and issue its general obligation negotiable serial coupon bonds in the principal amount of $1,700,000.00 and provide for the payment of the bond principal and interest by approximately equal annual tax levies in excess of the tax levy limitation upon Washington cities expressed in the statute and Constitution of the State of Washington."

Section 2 provided that the estimated cost of the sewage disposal system was $3,700,000, to which cost would be allocated the sum of $1,048,320 by the state, the proceeds of the $1,700,000 bond issue, and a contribution by the city of $951,680 out of its available funds.

Section 3 provided that the bond issue should run for twenty-five years. Section 4 provided for the issuance of seventeen hundred bonds of the denomination of $1,000 each, provided for interest, and for the levying of taxes to meet the payments plus interest as they should fall due.

Section 5 provided for the calling of a special election at which the proposed bond issue would be submitted to the qualified electors. Section 6 contained the "Ballot Title", submitting to the voters the proposal of the sale of bonds in

the amount of $1,700,000, with interest, to construct a sewage disposal system, all as provided by ordinance C8500.

At an election held June 4, 1946, the qualified electors adopted ordinance No. C8500. Pursuant to the ordinance, general obligation bonds in the amount of $1,700,000 were issued and sold. Added to this sum were the contributions from the state and the city, making a total of $3,700,000, all of which was paid into the city sewage disposal fund. The various sections of the system of sewage disposal, as described in § 1 of the ordinance, have been completed and interconnected to a point on the selected site of the sewage treatment plant, at a cost of $2,640,295.86.

It then developed that a portion of the selected site of the plant is situated within Riverside state park. The legislature, by the provisions of chapter 374 of the Session Laws of 1955, p. 1540, authorized the city to acquire one of two sites (one, the site selected in ordinance No. C8500, and the other, a site 9,000 feet distant) for use in connection with the construction and development of a sewage disposal system, by condemnation in the superior court for Spokane county. Section 2 of the act provided:

"The site shall be selected by the city of Spokane only after notice and public hearing on the selection of said site."

Notice of a public hearing was advertised, to be held in the council chamber on June 28, 1955, to determine which site was to be selected. According to the minutes, the discussion was somewhat heated. After the hearing, the council selected the site which had been previously selected in ordinance No. C8500. It is quite clear from the record that the proposed site would require an additional expenditure of either $2,268,400 or $1,881,500, depending upon which route would be taken, together with an annual cost of $18,000 for operating a pumping plant, and $35,000 for extending the necessary water main.

In the meantime, there was prepared and circulated a petition for a proposed initiative ordinance amending § 1 of ordinance No. C8500, changing the location of the site of the sewage treatment plant to the alternate site provided for in

chapter 374 of the Session Laws of 1955. The petition was filed with the city clerk, who, on June 16, 1955, certified to the council that it contained approximately 7,200 signatures. The council passed a motion that the petition be "placed on file."

This action was then commenced by filing a petition for a writ of mandamus praying that a writ issue commanding the defendants, as commissioners, to:

1. Pass the intiative without alteration; or

2. Submit the initiative to popular vote at a special election; or

3. Show cause why they should not do so.

An alternative writ was issued, and upon a hearing thereon, the trial court entered judgment dismissing the action. This appeal follows.

The charter of the city of Spokane, in § 4, Article I, provides:

"All power of the City, unless otherwise provided in this Charter, shall be exercised by, through and under the direction of five Commissioners, who shall constitute the Council and one of whom shall be Mayor. The Commissioners and Council shall be subject to the control and direction of the people at all times, by the initiative, referendum and recall, provided for in this Charter." ·

And again, in § 81, of Article IX:

"The people of Spokane, in addition to the method of legislation hereinbefore provided, shall have power of direct legislation by the Initiative and the Referendum."

Assuming that the selection of the site for the sewage treatment plant was a legislative function, and that the people had a right to make such selection by initiative, was the proposed ordinance sufficient to be submitted to the people?

RCW 80.40.020 authorizes cities to construct, purchase, acquire, maintain, and operate systems of sewerage. RCW 80.40.070 provides:

"When the governing body of a city or town deems it advisable that the city or town purchase, acquire, or construct any such public utility or make any additions and betterments thereto or extensions thereof, it shall provide

therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, and the ordinance shall be submitted for ratification or rejection to the voters of the city or town at a general or special election, except in the following cases where no submission shall be necessary: . . ."

. It must be remembered that the city did so provide when it passed and submitted to the voters ordinance C8500 in 1946. The ordinance contained eleven sections and was complete in every respect. Now the petitioners wish to amend only § 1 thereof, and that only with respect to the location of the site of the sewage treatment plant. True, the language contained therein (lifted from the original ordinance) provides for the issuance and sale of bonds in the amount of $1,700,000. However, that particular bond issue was submitted to the people and approved by them, together with a comprehensive plan and system for the construction of a sewage disposal system at a total cost of $3,700,000. This estimate included the cost of connecting the system with a treatment plant at a designated site.

The bonds were issued and sold. Contributions of $1,048,320 by the state and $951,680 by the city were made. The various sections of the system of sewage disposal as described in § 1 have been completed and interconnected, at a cost of $2,640,295.86. All of the provisions of C8500 have been executed, with the exception of building, connecting, and putting into operation the sewage treatment plant.

If the alternate site were to be selected, it would require a new ordinance, containing a plan or system for the construction of the treatment plant at the new site and its connection with the system already constructed under ordinance C8500, together with the estimated cost thereof and the plan of payment therefor. The proposed ordinance in question contains no such plan or system, and therefore violates the statute. *State ex rel. Ellensburg v. Clausen*, 87 Wash. 111, 151 Pac. 251.

Appellants contend that the trial court erred in refusing to strike certain affirmative matters from the answer and in admitting testimony with respect thereto. They state:

"This is a special statutory proceeding and fundamentally it is based on the determination of one question, and that is: 'Is there a mandatory duty on the defendants, under the charter, to call and hold a special election to pass upon the Proposed Ordinance submitted with the initiative petition?' If there was, and the defendants failed to perform that duty, the writ of mandamus should automatically issue, and there is no discretion in the defendants, or in the court, to determine whether or not the ordinance is good or otherwise for the good of the people who have reserved the right to themselves determine what should be done in connection with the proposed site."

■ Appellants would be correct if the issue were the selection of one of two sites. But that was not the issue. The issue was whether or not the proposed ordinance violates RCW 80.40.070. Appellants prayed that a writ issue directed to defendants to do certain things or, in the alternative, to show cause why they should not do so. An alternative writ was issued, and, in response thereto, the defendants alleged certain matters which were material to the issue as to whether or not the proposed ordinance was valid. The trial court, at the hearing, correctly admitted evidence thereon and ruled that the proposed ordinance was not valid. An application for a writ of mandamus has in it all the elements of a civil action, and if issues of fact are raised, they may be tried before the court and an appropriate judgment entered upon the findings. *State ex rel. Amende v. Bremerton*, 33 Wn. (2d) 321, 205 P. (2d) 1212.

■ We are satisfied, from the record, that if the proposed ordinance, amending § 1 of ordinance No. C8500, had been passed without alteration by the council, or had been submitted to popular vote at a special election, it would have been invalid because it did not contain a plan for the acquisition, construction and installation of a sewage treatment plant and the method of its financing. Mandamus does not lie to compel the doing of a vain and useless thing. *State ex rel. Northwestern Bond & Mortgage Corp. v. Hinkle*, 134 Wash. 140, 235 Pac. 359.

The judgment is affirmed.

DONWORTH, C. J., FINLEY, ROSELLINI, and OTT, JJ., concur.