[No. 12717.   Department One.   August 20, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM PAUL, *Appellant*.[1]

STATUTES—TIME OF TAKING EFFECT—REPEAL—INITIATIVE AND REFERENDUM—CONSTRUCTION—INTOXICATING LIQUORS—PROHIBITION.   The state wide prohibition law, adopted by initiative at the general election of 1914, does not have the effect of repealing the local option law or suspending its provisions during the interval until January 1st, 1916; in view of the concluding section (Laws 1915, p. 17) providing that the act shall take effect and be in full force from and after the first day of January, 1916, conceding such section to be valid in the light of the initiative and referendum amendment to the constitution (Laws 1911, p. 139) providing that an initiative measure "shall be operative on and after the thirtieth day after the election at which it is approved"; since the act contains no express repeal of existing laws, and even an express repeal does not take effect prior in time to that fixed for other provisions of the act.

SAME—ENACTMENT—INITIATIVE MEASURES — REPEAL OF EXISTING LAWS.   The passage of an initiative measure as a law being the exercise of the same power of sovereignty as that exercised by the legislature in the passage of laws, the people can supersede existing laws by an initiative measure only by a repeal, express or implied.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered January 30, 1915, upon a trial and conviction of violating the local option law.   Affirmed.

*Miller & Wilkinson*, for appellant.

*James O. Blair* and *L. M. Burnett*, for respondent.

[1]Reported in 151 Pac. 114.

PARKER, J.—The defendant was convicted and fined in the Clarke county superior court for selling intoxicating liquor in the city of Vancouver while that city, as claimed by the prosecution, was a unit in which such sale was prohibited by virtue of an election held therein under the local option law. Rem. & Bal. Code, § 6292 *et seq.* (P. C. 267 § 29). He has appealed to this court and seeks reversal of the judgment rendered against him upon the sole ground that the local option law was not, at the time the sale was made by him upon which his prosecution rests, in force in the city of Vancouver, because it had then been superseded and rendered of no effect by virtue of the passage of the statewide prohibition law, being Initiative Measure No. 3, adopted at the general election of November 3, 1914. Laws of 1915, p. 2.

At the general election of November 3, 1914, the people of the city of Vancouver voted, under the local option law, to prohibit the sale of intoxicating liquor therein. No contention is made against the regularity or validity of this election or that it would not result in making the sale of intoxicating liquor in that city unlawful after the first day of January, 1915, but for the passage of the prohibition law by the vote of the people of the state on November 3, 1914. At that time the appellant was duly licensed to sell intoxicating liquor in the city up until June, 1915. The sale upon which his conviction rests was made by him on January 7, 1915. It is conceded that the election of November 3, 1914, would revoke his license and render the local option law effective in Vancouver on January 1, 1915, but for the passage of the prohibition law on November 3, 1914.

The concluding section of the prohibition law (Laws of 1915, p. 17) reads: "This act shall take effect and be in full force and effect from and after the first day of January, 1916." Counsel for appellant argues; in substance, that while this law will not be in force to prevent the sale of intoxicating liquor in the state until January 1, 1916, it

nevertheless, immediately upon its passage by the people, superseded and rendered of no effect the local option law, in so far, in any event, as putting that law into force in a new territory is concerned; and that, since the local option law was to go into force in the city of Vancouver on January 1, 1915, by virtue of the local election, and the prohibition law was passed by the people prior to that time, the local option law did not go into force in that city at all. In their brief, counsel for appellant state their position as follows:

"We do not contend that the ordinary police regulation would not continue in force and that public authorities would have the same power and control over the liquor business that they had under previous laws, so far as control extended, but our position is that no legislation can be enacted or put into force after this law went into operation which would be in conflict with it or with its evident spirit and purpose."

In support of this position, counsel call our attention to the provisions of the initiative and referendum amendment to our constitution, reading: "Such measure shall be in operation on and after the thirtieth day after the election at which it is approved." Laws of 1911, p. 139.

The language of the prohibition law above quoted, postponing its going into full force and effect until the first day of January, 1916, read in the light of this constitutional provision, it is insisted, means that the law became effective immediately upon its passage by the people, in so far as by its terms it superseded existing laws, though it would not become effective in its prohibition of the liquor traffic in the state until the first day of January, 1916. It occurs to us that such might be an argument of some force in support of a contention that all of the provisions of the prohibition law went into force on the thirtieth day after it was voted upon by the people, and that therefore the provision postponing its going into force and effect until January 1, 1916, is void. But this, counsel is careful not to make as their contention.

We are, therefore, not presented here with the question of the people's power to postpone the going into effect of an initiative measure; but with the question of what the people intended by the provision in this law postponing its going into force and effect until the first day of January, 1916. Now there are no express words of repeal in this law, nor are there any express words touching its effect upon any existing law. Whatever it accomplishes in this respect is by implication only. Suppose there were express words in the law repealing all laws inconsistent therewith. Clearly, in such case, the force and effect of existing laws would be impaired to as great an extent as by the implied effect of this law. The rule seems to be well settled without exception that an express repealing clause in a statute does not have any force prior in time to that of other provisions thereof, in the absence of clear expression therein to the contrary. In the early case of *Spaulding v. Alford*, 1 Pick. (Mass.) 33, Justice Wilde, speaking for the court touching the effect of a repealing clause where the going into effect of the act involved was postponed to a future date, said:

"All matters and clauses in the former act 'which are contrary to the provisions of this act' are repealed. This act passed in February, 1819. And the plaintiff's counsel contend, that the repealing clause took effect immediately, so that the plaintiff might lawfully practice in the interval between February and July, and would not come within the provisions of either act. There is, however, nothing inconsistent or contradictory in allowing the first act to operate till July, 1819, as to the licenses to practitioners."

In *McArthur v. Franklin*, 16 Ohio St. 193, 203, the court disposed of the question similarly presented, by the following observations:

"The point made is, that the new act took effect immediately on its passage, so as to repeal the section which it was designed to amend; but, that its operation for all other purposes was postponed to the first day of May following. The husband of the plaintiff died, it is said, between the 27th

of March and the 1st of May. Hence, it is claimed that the plaintiff has not a right of dower, for the reason that there was no law in force giving dower at the date of her husband's death.

"The rule upon the question raised, is thus stated in Smith's commentaries on the construction of statutes: 'Where the provisions of a revising statute are to take effect at a future period, and the statute contains a clause repealing the former statute upon the same subject, the repealing clause does not take effect until the other provisions of the repealing act come into operation.' Smith's Com. on Stat. Construction, p. 902, sec. 783.

"We have no doubt this is the correct construction of the act now in question. The effect of the general statute prescribing when laws containing no special provision on the subject, shall go into operation, has the same effect upon the act in question, as if the latter had contained a provision prescribing the first of May as the time at which it was to take effect."

In *Leyner v. State*, 8 Ind. 490, the question was presented upon a change in the statute relating to intoxicating liquor much as in this case, where the court said:

"The liquor law of 1855 was approved *February 16*, of that year. It contained a clause repealing all acts inconsistent with its own provisions; and also a clause saving pending suits under former laws. It is insisted that the repealing and saving clauses took effect upon the approval of the act in *February*, 1855. But this position is clearly untenable. It is true that the thirty-ninth section is in the present tense—that all acts are hereby repealed, and actions now pending are saved (Laws of 1855, pp. 222, 223); but this section must be taken in connection with the forty-second section, which expressly provides that the act shall take effect and be in force from and after the 12th of *June* next. *Id.*, p. 223. The repealing and saving clauses, therefore, speak from that date, and not from the date of the approval."

See, also, *State v. Williams*, 173 Ind. 414, 90 N. E. 754, 140 Am. St. 261; *Grant v. Alpena*, 107 Mich. 335, 65 N. W. 230; *State ex rel. Bauer v. Edwards*, 136 Mo. 360, 38 S. W.

73; *Schneider v. Hussey*, 2 Hasb. (Idaho) 8, 1 Pac. 343; *Ex parte Ah Pah*, 34 Nev. 283, 119 Pac. 770. Our own decisions in *State ex rel. Atkinson v. Northern Pac. R. Co.*, 53 Wash. 673, 102 Pac. 876, and *Walker v. Lanning*, 74 Wash. 253, 133 Pac. 462, are in harmony with this view. It seems quite clear to us that the prohibition law, by reason of its terms postponing its going into effect until January 1, 1916, did not work a repeal of any part of any existing laws until that date.

The argument of counsel for appellant, however, might seem to make the question somewhat narrower than one of mere repeal, since they insist that the local option law cannot be put into force and effect in new territory after the passage of the prohibition law, though they concede that the local option law remains in force until January 1, 1916, in the territory already occupied by it by virtue of local elections, at the time of the passage of the prohibition law; and also concede that existing statutory provisions governing the liquor traffic will remain in force until January 1, 1916. In other words, their argument seems to be that the local option law is suspended rather than repealed, in so far as putting it into effect in new territory is concerned, upon the passage of the prohibition law. Having so limited their argument, they call our attention to, and rely strongly upon, the decision of the supreme court of the United States in *Northern Pac. R. Co. v. State of Washington ex rel. Atkinson*, 222 U. S. 370, reversing our decision in *State ex rel. Atkinson v. Northern Pac. R. Co.*, supra, upon writ of error. That case involved the question of the effect of the act of Congress of March 4, 1907, relating to the hours of labor of interstate railway employees, upon an existing law of the state of Washington upon the same subject. The act of Congress by its terms was to "take effect and be in force one year after its passage." Chief Justice White, speaking for the supreme court of the United States, and holding that the law of the state of Washington was superseded at the time

of the passage of the act of Congress notwithstanding such
act did not take effect until one year after its passage, said:

".  .  .  the right of a state to apply its police power
for the purpose of regulating interstate commerce, in a case
like this, exists only from the silence of Congress on the
subject and ceases when Congress acts on the subject or
manifests its purpose to call into play its exclusive power.
This being the conceded premise upon which alone the state
law could have been made applicable, it results that as the
enactment by Congress of the law in question was an as-
sertion of its power, by the fact alone of such manifestation
that subject was at once removed from the sphere of the oper-
ation of the authority of the state. To admit the funda-
mental principle and yet to reason that because Congress
chose to make its prohibitions take effect only after a year,
the matter with which Congress dealt remained subject to
state power, is to cause the act of Congress to destroy itself;
that is, to give effect to the will of Congress as embodied in
the postponing provision for the purpose of overriding and
rendering ineffective the expression of the will of Congress
to bring the subject within its control,—a manifestation aris-
ing from the mere fact of the enactment of the statute."

The Federal supreme court manifestly did not regard the
state statute as repealed by the Federal statute; but since
it was a law upon a subject within the exclusive jurisdiction
of the national government when the government chose to
assume such jurisdiction, the state law was immediately sus-
pended in its operation by the mere fact that the national
government had assumed jurisdiction over the subject. Sub-
stantially the same situation is presented in the enactment
of bankruptcy laws by the national government. Such laws
do not repeal the state insolvency laws; but merely suspend
their operation, which laws, if not repealed by the states,
are revived and again come into full force and effect by the
repeal of national bankruptcy laws. *Tua v. Carriere*, 117
U. S. 201; 3 R. C. L. 165; see note in *State ex rel. Strohl v.
Superior Court* (20 Wash. 545, 56 Pac. 35), 45 L. R. A.
186.

Now the passage of an initiative measure as a law, by the people, is not the exercise of the power of any different sovereignty than is the passage of a law by the legislature. Each is simply the exercise of the legislative power of the state. Nor is the power superior in one as compared with the other, with the exception that there are certain restrictions against repeal by the legislature of an act passed by the people, within a limited time. Hence, there is not presented here any question of superseding existing laws of one sovereignty by the passage of laws by another sovereignty having exclusive jurisdiction over the subject, when it chooses to exercise such jurisdiction. The legislative power of Congress is the power of a superior and different sovereignty from that of state, so far as interstate commerce is concerned. And when Congress passes a law touching that subject, to that extent all state laws on that subject are suspended, though not repealed. This, we think, renders plain the distinction between this case and *Northern Pac. R. Co. v. State of Washington ex rel. Atkinson, supra,* relied upon by counsel for appellant.

We are of the opinion that the people can supersede existing laws of the state only by repeal, expressly or by implication, by the passage of an initiative measure, and that the people in the enactment of the prohibition law neither intended to repeal or in any manner supersede the force and effect of existing laws until the first day of January, 1916, when, of course, all laws inconsistent therewith will be repealed and superseded. We conclude that the judgment must be affirmed. It is so ordered.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.