[No. 22464. *En Banc.* April 10, 1930.]

THE STATE OF WASHINGTON, *on the Relation of Jacob H. Miller et al., Plaintiffs,* v. J. GRANT HINKLE, *as Secretary of State, Respondent.*[1]

·*Charles Hall, Daniel Landon, Philip Tworoger,* and *E. B. Palmer,* for relators.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondents.

HOLCOMB, J.—This is an original proceeding in this court for a mandate to compel the secretary of state to accept and file an initiative petition proposing the submission to the people, under the seventh amendment to the state constitution and the legislative facilitating act (Rem. Comp. Stat., § 5397 *et seq.*) of a measure redistricting and reapportioning the state for pur-

[1]Reported in 286 Pac. 839.

poses of representation in the state senate and house of representatives.

Respondent has demurred to the petition and affidavit for the writ.

Section 1 of article II of the constitution originally read:

"LEGISLATIVE POWERS, WHERE VESTED.—The legislative powers shall be vested in a senate and house of representatives, which shall be called the legislature of the state of Washington."

Section 2 of that article fixes the minimum and maximum number of senators and representatives.

Section 3 provides:

"THE CENSUS.—The legislature shall provide by law for an enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five, and every ten years thereafter; and at the first session after such enumeration, and also after each enumeration, made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, excluding Indians not taxed, soldiers, sailors, and officers of the United States army and navy in active service."

By the seventh amendment, adopted in 1912, section 1, *supra,* was amended to read, in part, as follows:

"LEGISLATIVE POWERS, WHERE VESTED.—The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.

"(a) Initiative: The first power reserved by the people is the initiative. . . .

"(b) Referendum. The second power reserved by the people is the referendum, . . ."

Respondent contends that the legislative power of redistricting and reapportioning the state still remains exclusively a prerogative of the bi-cameral representative legislative body, known in common parlance and designated, "the legislature."

The question is new, and the *Attorney General* was justified in resisting the filing of the initiative measure until the effect of the seventh amendment be determined.

The *Attorney General* concedes, however, with commendable discrimination, that, if the matter of redistricting or reapportioning the state relates to an act or acts of the legislature, or law-making, the seventh amendment is enforceable; otherwise not. The *Attorney General* also concedes that this court has always been committed to the rule of liberal construction to the end that popular rights might be preserved and rendered effective.

The history of the evolution of initiative and referendum as parts of the law-making power of the people of this state has been set forth in *State ex rel. Case v. Superior Court,* 81 Wash. 623, 143 Pac. 461, Ann. Cas. 1916B 838; *State ex rel. Brislawn v. Meath,* 84 Wash. 302, 147 Pac. 11; *State v. Paul,* 87 Wash. 83, 151 Pac. 114; *Gottstein v. Lister,* 88 Wash. 462, 153 Pac. 595, Ann. Cas. 1917D 1008; *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 159 Pac. 92; *State ex rel. Howell v. Superior Court,* 97 Wash. 569, 166 Pac. 1126; *State ex rel. Mullen v. Howell,* 107 Wash. 167, 181 Pac. 920.

As to whether a reapportionment act is a "law," we think it is as much a law as a law creating counties or municipalities, or establishing their boundaries.

As is said in one of the cases cited by the *Attorney General*:

"The word 'law' imports a general rule of conduct with appropriate means for its enforcement declared by some authority possessing sovereign power over the subject." *In re Opinion of the Justices,* 262 Mass. 603, 160 N. E. 439.

The eminent Judge Brewer, then of the supreme court of Kansas (later of the United States supreme court), declared it to be a law; that to create a representative or senatorial district requires a law. *Prouty v. Stover,* 11 Kan. 235. To the same effect are *Wheeler v. Herbert,* 152 Cal. 224, 92 Pac. 353; *State ex rel. Barrett v. Hitchcock,* 241 Mo. 433, 146 S. W. 40.

Article XXII of the constitution also manifestly contemplates that the reapportionment of the state for legislative representation shall be "by law." The two sections in that article begin with the phrase "until otherwise provided by law."

We are firmly convinced that the matter of apportioning the state for legislative membership is a matter of law, requiring legislative acts.

In one of our earliest cases touching amendment seven, *State ex rel. Case v. Superior Court, supra,* we took occasion to say:

". . . it is worthy of note, and that we keep in mind as we proceed, that these initiative and referendum provisions of our constitution are all embodied in one section, which contains these words: 'This section is self-executing, but legislation may be enacted especially to facilitate its operation.' Thus there is strongly suggested, in the language of the constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be *facilitated,* and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud

and mistake in the exercise by the people of this constitutional right.''

That the initiative is as broad as the referendum, we decided in *State ex rel. Howell v. Superior Court, supra.*

We also decided in the *Mullen* case, *supra*, that legislative power in this state under the seventh amendment had re-vested in the people, concurrently, the powers theretofore exercised by the bi-cameral legislature and the governor by direct legislation.

The effect of that case is limited by the decision of the United States supreme court in *Hawke v. Smith*, 253 U. S. 221. That case, however, does not impinge upon our own decisions and construction of our seventh amendment where no restriction of the Federal constitution is involved. No Federal question affects this case. Indeed, in a somewhat earlier case decided by that court, *State ex rel. Davis v. Hildebrant*, 241 U. S. 565, under a legislative act redistricting the state for congressional elections as to which the power of referendum was invoked under a constitutional amendment almost identical with ours, the supreme court of Ohio held that the legislative act was subject to the referendum under that amendment, declaring that under it the legislative power in that state was thereby vested not only in the general assembly, but also in the people by referendum. The United States supreme court upheld that construction of the constitutional amendment involved in that case.

It is common knowledge that the legislature has ignored the mandate of our constitution requiring reapportionment of the state for legislative representation ever since 1901.

The passage of an initiative measure as a law is the exercise of the same power of sovereignty as that ex-

ercised by the legislature in the passage of a law. *State v. Paul, supra.*

Section 1 of article II of the constitution is modified and controlled by amendment VII, so that the legislature is not the whole legislative power as it now exists.

We are persuaded that, under the seventh amendment to our constitution, the people have a right to initiate legislation looking to the legislative reapportionment of the state.

The writ will therefore be granted.

MITCHELL, C. J., FRENCH, BEALS, MAIN, PARKER, MILLARD, and TOLMAN, JJ., concur.

FULLERTON, J. (dissenting)—With the conclusion of the court on the question discussed in its opinion, I am in accord. I have no doubt that a legislative enactment, which "shall apportion and district anew the members of the senate and house of representatives according to the number of inhabitants," is a law as that term is used in the state constitution, and that such a law may be enacted either by the legislative body itself or by the people through an initiative proceeding.

The proposed enactment, however, presents another question which I think is worthy of the consideration of the court before it is submitted to the electorate for enactment or rejection. It contains provisions which to my mind render it of doubtful constitutionality, and I fear that, if it is adopted by the electorate, the court may be compelled ultimately to say that it does not constitute a valid law.

I am aware of the contention that this is not an inquiry now open to the court. Indeed, the learned counsel who represent the proponents of the measure, anticipating that an objection might arise in the mind of the court as to its constitutionality, make an argument

in attempt to show that the question is not now before it. But to me the argument is not convincing. In the first place, the question has been heretofore determined by this court contrary to the contention. In *State ex rel. Berry v. Superior Court*, 92 Wash. 16, 159 Pac. 92, an initiative measure was proposed which was thought to contain matter inimical to the purposes of such measures. A proceeding was brought for the purpose of enjoining its submission to the people. The proceeding was instituted in the superior court, and that court dismissed it, holding that the question involved was not one within its jurisdiction to determine. This court reversed the decision of the trial court, holding that the measure could not be submitted without an elimination of its objectionable parts.

The question there involved was not the constitutionality of the measure, but the case is nevertheless in point in principle. Manifestly, if any cause is sufficient to warrant the court in refusing to permit an initiative measure to be submitted to the people, the failure of the proposed measure to constitute a law if approved is such a cause. In the second place, this court has never heretofore hesitated to inquire into the validity of an act, when its attempted enforcement would entail upon the state the expenditure of large sums of money. An illustrative case is *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, where we inquired into the constitutionality of the workmen's compensation act in a proceeding brought against the state auditor to enforce the payment of a claim incurred under the act, and which the auditor had refused to pay because he thought the act in violation of the state constitution.

The limited time at my disposal has not enabled me to give the proposed measure that intensive study a conclusive determination of the questions involved re-

quires, but a mere reading of the measure suggests grave reasons for doubting its constitutionality. Some of these I will mention.

The constitution (Art. II, § 3) provides that the legislature "shall apportion and district anew the members of the senate and house of representatives," yet the proposed measure, while it may apportion the members of the senate and the members of the house of representatives, does not district them anew. On the contrary, in most instances the measure simply provides that in a given territory a certain number of districts shall be created, and vests in the secretary of state the duty of delineating and marking the boundaries of the districts. In my opinion, to district the state is a legislative power, a power which must be exercised by the legislature itself (in this instance by the electorate), and a power that cannot be delegated to a board or person.

The constitution (Amend. 7, subd. "c") provides that:

"No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following its enactment,"

yet the proposed measure contains the following provision:

"Provided, however, that the schedule of senatorial and representative districts as apportioned and districted anew by this act, shall not affect the members or the rights and duties of the state legislature assembling in January, 1931, during the period of its regular session and for ninety days following the final adjournment of said session; and in case the said legislature shall have enacted at said session a constitutional reapportionment law, substantially conforming to the schedule of districts and members prescribed in this measure, or prescribing a variant schedule more nearly

in accordance with the number of inhabitants in the state and the several districts, as shown by the United States census enumeration of 1930, in such event said schedule and re-apportionment act of the legislature shall supersede the schedule of this initiative measure, but otherwise it shall be in full force and effect from and after ninety days following the date of final adjournment of the regular session of the state legislature opening in January, 1931.''

The constitution (Art. II, § 6), after providing that senators shall be elected by single districts, further provides that ''no representative district shall be divided in the formation of a senatorial district,'' yet, as I read the proposed measure, it proceeds in utter disregard of the quoted part of this provision.

The constitution (Art. II, § 3) provides that the state shall be apportioned and districted ''according to the number of inhabitants,'' yet the act, with reference to King county, provides:

''And for the purpose of including or excluding the residence locations of incumbent senators and representatives, any district boundary may be modified as between two districts not exceeding four precincts from its normal location, and such delineation shall be deemed in fulfillment of the population proportion prescribed in the act and schedule of apportionment.''

If this clause of the proposed measure has meaning at all, it means that, for the purposes of including or excluding the residence locations of incumbent senators and representatives, the secretary of state may delineate the boundaries of the precincts affected without regard to the number of inhabitants.

I have by no means exhausted the apparent conflicts between the measure and the constitution, but I do not feel that I need pursue the inquiry further. My purpose in pointing out these possible conflicts is to emphasize the thought that the court should set the cause

down for argument on the constitutional questions the act suggests, and direct its submission to the electorate only after it determines that the proposed measure will be a valid law if enacted.

Because the constitutional validity of the measure is left undetermined, I cannot concur in the conclusion of the court.