[No. 41722. En Banc. April 15, 1971.]

ROBERT FORD, *Respondent,* v. ED LOGAN *et al., Respondents,* OVERTAXED, INC., *Petitioner.*

148

*James S. Munn* (of *Caplinger & Munn*), for petitioner.

*Houger, Garvey & Schubert*, by *John R. Allison*, for respondent Ford.

NEILL, J.—This is a taxpayer's declaratory judgment action in which he seeks to enjoin King County election officials from placing on the ballot a measure entitled: "Initiative No. 3 A Repeal of King County Charter."[1] This

---

[1]The text and ballot title of the proposed initiative read:

"Repeal of King County Charter

"A Charter Amendment repealing the King County Charter and providing for a return to the statutory and constitution 'commission' form of county government to be effective December 1, 1970.

"Be it enacted by the people of King County, State of Washington:

"Section 1. The King County Charter enacted by the people of King

initiative was proposed by a local group known as Overtaxed, Inc. Overtaxed was not an original party to this action.

The requisite number of signatures under the county charter was obtained and all charter procedural steps for placing the initiative on the ballot have been completed. Plaintiff asserts that the measure should not be placed on the ballot because (1) the King County Charter cannot be amended or repealed by initiative, and (2) the content of the proposed initiative is confusing, misleading, and fails to adequately apprise the voters of the consequences of their vote.

The trial court entered an oral decision in favor of plaintiff on each of the above grounds. Thereafter, Overtaxed learned that defendants of record had no plans to appeal. Overtaxed then petitioned to intervene as a defendant. The trial court allowed intervention on the understanding that it was solely for purposes of appeal and that Overtaxed would not contest the trial court's discretion as to supersedeas bond. That same day, the trial court entered formal findings of fact, conclusions of law, judgment and decree in favor of plaintiff. We granted Overtaxed's petition for a writ of certiorari.

At the outset, plaintiff, Mr. Ford, challenges the trial court's action in permitting Overtaxed to intervene after oral decision, but prior to formal disposition of the cause. Intervention was granted under CR 24(b)(2) which states:

(b) Permissive Intervention. Upon timely application, anyone may be permitted to intervene in an action:

. . .

(2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a

County on November 5, 1968, is hereby amended by deleting Article 1 through Article 9 inclusive, thereby repealing said Charter.

"Section 2. King County shall operate according to the constitution and laws of the State of Washington relating to county government.

"Section 3. The amendment shall become effective 12/1/70."

federal or state governmental officer or agency or upon any regulation, order, requirements, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The trial court's decision under this rule is discretionary, and the question on review is whether that discretion has been abused. Plaintiff Ford contends that the application to intervene was not timely made and that the granting thereof unduly prejudices him.

Plaintiff cites our holding that a complaint in intervention cannot be filed after final judgment (*Portland Ass'n of Credit Men, Inc. v. Earley*, 42 Wn.2d 273, 254 P.2d 758 (1953)), and analogizes that the underlying policy of that case should bar "judgment speculation" by potential parties by awaiting oral decision, thus prohibiting intervention by Overtaxed. *Portland Ass'n of Credit Men, Inc. v. Earley, supra*, was decided under RCW 4.08.190 which expressly provided that intervention must have been before trial. That statute has been superseded by CR 24(b) which eliminates the "before trial" requirement of the statute and injects the discretion of the trial court on the issue of a "timely application." The trial court noted that intervention at this stage of the case would have the effect only of allowing an appeal, and would not impose further trial litigation. The undue prejudice asserted by plaintiff is the suggested necessity of submitting additional evidence as to the appropriate amount for a supersedeas bond. However, the grant of intervention virtually eliminated this possibility, in that it was partially premised on an agreement by intervenor to accept the court's discretion as to supersedeas bond. Moreover, the trial court was presented with a situation in which intervention by Overtaxed was the only available means by which the petition signatories would have the benefit of an appeal, a situation that did not manifest itself until after the oral decision. Under these circumstances,

we cannot say that the trial court abused its discretion in permitting the intervention.

The initiative aspires to "amend" the King County Charter by deleting all of its sections, thus repealing it. For all realistic purposes, the measure seeks a repeal of the King County Charter, and we will so treat it. The facts present three basic issues: (1) Do our courts have jurisdiction to determine whether the subject matter of a proposed initiative is within the scope of the initiative power before the proposal is enacted by the electorate? We conclude that they do. (2) Do the electorate of King County have the power to directly repeal their charter by initiative? We conclude that they do not. (3) Is this proposed initiative invalid as confusing in content or misleading in ballot title? In view of our conclusions as to the other issues, we do not reach this question.

We first meet the contention that courts lack jurisdiction at this stage of the initiative process. In support of this contention, intervenor cites cases where, in various contexts, we have stated that courts will not determine the validity of contemplated legislation prior to its enactment and that courts have no jurisdiction to intervene in the legislative process. *State ex rel. Griffiths v. Superior Court,* 92 Wash. 44, 159 P. 101, 162 P. 360 (1916); *State ex rel. Donohue v. Coe,* 49 Wn.2d 410, 302 P.2d 202 (1956); *State ex rel. O'Connell v. Kramer,* 73 Wn.2d 85, 436 P.2d 786 (1968). A reading of these cases discloses that in each instance we either were considering subject matter clearly legislative in nature or were not confronted with the threshold question of what is legislative.

In *Griffiths v. Superior Court, supra,* the subject matter of the proposed initiative was an amendment to existing workman's compensation law. We intervened in the legislative process to the extent of excising portions of the preamble to the proposed initiative which were argumentative, rather than legislative, in nature and therefore beyond the proper exercise of the initiative power. *Accord, State*

152

*ex rel. Berry v. Superior Court,* 92 Wash. 16, 159 P. 92 (1916).

In *State ex rel. Donohue v. Coe, supra,* the proposed initiative was reapportionment of the legislature. We refused to enjoin the secretary of state from placing the measure on the ballot. The subject matter there was clearly a legislative matter.

In *State ex rel. O'Connell v. Kramer, supra,* we intervened to require the secretary of state to file a proposed initiative on the ground that his refusal to do so exceeded his authority. Our holding in that case related solely to the scope of the secretary's authority prior to the circulation of petitions for signatures and not to the ground asserted by the secretary for his refusal to file the proposal, which was that a constitutional convention cannot be called or established by initiative. For our purposes in meeting the issues presented to us in *O'Connell,* we assumed the legislative nature of the subject matter.

The foregoing cases do not derogate from the numerous instances in which this court has, prior to enactment, determined the threshold question of whether a given proposal was "legislative" in nature so as to be the proper subject of initiative. The courts of this state possess and have long exercised jurisdiction to adjudicate that question. *E.g., Paget v. Logan,* 78 Wn.2d 349, 474 P.2d 247 (1970); *State ex rel. Close v. Meehan,* 49 Wn.2d 426, 302 P.2d 194 (1956); *State ex rel. Payne v. Spokane,* 17 Wn.2d 22, 134 P.2d 950 (1943); *State ex rel. Miller v. Hinkle,* 156 Wash. 289, 286 P. 839 (1930). Accordingly, we proceed to determine whether repeal of the King County Charter is within the initiative power.

 We are mindful of the fact that the initiative and referendum provisions of the King County Charter grant "liberal and comprehensive legislative authority to the voters, excluding only initiative ordinances providing 'for the compensation or working conditions of county em-

ployees'." *Paget v. Logan, supra* at 351.[2] We are further cognizant of the basic limitation contained in Const. art. 11, § 4 (amendment 21) under which "home rule" charters are authorized in this state: "Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . ." Thus, while the initiative powers under the King County Charter are quite broad, they are not unlimited, but must be consistent with the constitution and laws of the state. We early recognized this limitation in *State ex rel. Berry v. Superior Court,* 92 Wash. 16, 26, 159 P. 92 (1916):

> The people in their legislative capacity are not, however, superior to the written and fixed constitution. Nor is the individual who proceeds to initiate any legislation. His act in initiating a measure is but a voluntary one, and is permitted and defined, limited and circumscribed, by the constitution and the laws passed in obedience to and compliance with the constitution as amended.

---

[2]Section 230.50 of the charter provides: "Ordinances except ordinances providing for the compensation or working conditions of county employees may be proposed by filing with the county council petitions bearing signatures of registered voters of the county equal in number to not less than ten percent of the votes cast in the county for the office of county executive at the last preceding election for county executive. Each petition shall contain the full text of the proposed ordinance.

"The county council shall consider the proposed ordinance. If the proposed ordinance is not enacted within ninety days after the petitions are presented, it shall be placed on the ballot at the next regular or special election occurring more than one hundred thirty-five days after the petitions are filed or at an earlier election designated by the county council. However, if the proposed ordinance is enacted at any time prior to the election, it shall not be placed on the ballot or be voted on unless it is subjected to referendum.

"If the county council rejects the proposed ordinance and adopts a substitute ordinance concerning the same subject matter, the substitute ordinance shall be placed on the same ballot with the proposed ordinance; and the voters shall first be given the choice of accepting either or rejecting both and shall then be given the choice of accepting one and rejecting the other. If a majority of the voters voting on the first issue is for either, then the ordinance receiving the majority of the votes cast on the second issue shall be deemed approved. If a majority of those voting on the first issue is for rejecting both, then neither ordinance shall be approved regardless of the vote on the second issue."

154

■ A fundamental limit on the initiative power inheres in its nature as a legislative function reserved to the people. In Washington, that power derives from our Const. art. 2, § 1 (amendment 7).[3] It is clear from the constitutional pro-

[3]"Art. 2 § 1 Legislative Powers, Where Vested. The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.

"(a) Initiative: The first power reserved by the people is the initiative. Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measure shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other. If the majority of those voting on the first issue is for neither, both fail, but in that case the votes on the second issue shall nevertheless be carefully counted and made public. If a majority voting on the first issue is for either, then the measure receiving a majority of the votes on the second issue shall be law."

vision that the initiative process, as a means by which the people can exercise directly the legislative authority to enact bills and laws, is limited in scope to subject matter which is legislative in nature.

The question before us is whether repeal of a "home rule" charter is a legislative act. In proceeding to answer this question, we first note that, once validly established, a "home rule" charter is the "organic law" of the county. Const. art. 11, § 4 (amendment 21).

■ We find nothing in the provisions of Const. art. 2, § 1 (amendment 7) which places within the legislative authority the power to amend or repeal the very organic law which allocates that authority. To the contrary, our constitutional provisions for amendment are distinct and apart from article 2, relating to the legislative authority.

The method by which our constitution may be amended is set forth in Const. art. 23, § 1, and involves two distinct phases. First, two-thirds of each house of the legislature must agree to submit the proposed amendment. Then it must be approved and ratified by the majority of the electors acting in their capacity as the ultimate sovereign. The process is manifestly distinct from that involved in the enactment of ordinary bills or laws. The legislature can only propose, it cannot effectuate, amendments. Such complete action is not legislative in nature under the general provisions of our constitution. Rather, this act of amending or repealing the basic organic instrument of government is of a higher order than the mere enactment of laws within the framework of that organic structure. This distinction has been prudently and thoughtfully included in the structure of American constitutional government, for to permit direct action by a majority to change a basic form of government would enable any given majority to remove all protections contained within constitutional frameworks. It is agreed, of course, that amendment or repeal of organic law is ultimately ratified or rejected by the electorate which also selects the members of the legislature who propose the change. However, the safeguards

against hasty or emotional action are of fundamental importance. Under article 23, these safeguards consist of the deliberative nature of a legislative assembly, the public scrutiny and debate made possible during the legislative process, the requirement of a two-thirds vote in each independent house of a bicameral body, and the tempering element of time. These safeguards are not to be lightly cast aside in an understandable zeal for the right of the people to act directly on matters of common legislation. Amendment of our constitution is not a legislative act and thus is not within the initiative power reserved to the voters. It necessarily follows that that which cannot be amended by legislation cannot be abolished thereby. By its nature, then, the initiative power set forth in Const. art. 2 does not include the power to directly amend or repeal the constitution itself.

■ If the initiative power at the county level under a "home rule" charter is to be expanded beyond its article 2 limits, such expansion must find support in some other constitutional provision, for such charters are "subject to the Constitution."

Intervenor urges that such support is established by *State ex rel. Linn v. Superior Court*, 20 Wn.2d 138, 146 P.2d 543 (1944), where we held that, by the terms of Const. art. 11, § 10, amendment of certain city charters was rendered a legislative act which could be accomplished by initiative. We need not here decide whether a similar conclusion is dictated by the language of Const. art. 11, § 4 (amendment 21), for, as we noted at the outset, the initiative now before us proposes repeal, not amendment, of the King County Charter. We find nothing in the constitutional provisions relating to home rule charters by which the initiative power is expanded to include repeal of the organic law which such charters constitute.

The provisions of Const. art. 11, § 4 (amendment 21), set forth a 3-step method for establishing a new charter. An election of freeholders is called by the legislative authority or by petition of a specified number of the county's

registered voters. The freeholders then adopt a proposed charter which must be submitted for ratification by a majority of the voting electors. Although article 11 makes provision for amendments to the charter, it contains no express method for repeal.[4]

By reason of the inherent limitation on the power of initiative, and by reason of the fact that "home rule" charters are subject to the constitution, we hold that "home rule" charters cannot be repealed by initiative. To hold otherwise would be to say that the initiative power at the local level is broader than, and inconsistent with, the initiative power reserved under our constitution. That result is precluded by the "subject to" clause of Const. art. 11, § 4 (amendment 21).

It may be suggested that, since a majority of the voting electorate has the final voice in ratifying or rejecting a proposal to repeal the charter, the proposal can just as well be placed initially before the people, and that the intervening freeholder procedure is surplusage and useless. Even if this suggestion appealed to us as the better wisdom, it is not our prerogative to "amend" the constitution by judicially injecting this additional method. See Burns v. Alderson, 51 Wn.2d 810, 322 P.2d 359 (1958).

Affirmed.

McGovern and Stafford, JJ., concur.

Hamilton, C.J., and Finley, J., concur in the result.

Hale, J. (dissenting)—The main thesis of the court, as I understand it, is that the people of King County, in seek-

---

[4]However, repeal can be effected by use of the same procedure set forth in amendment 21 for creating the charter. The electors may "at any time" call a freeholders election by petition. The freeholders may propose a new charter which simply states that the government of the county shall be returned to that provided under general laws with provision for the orderly transfer of offices, officers, and duties. In such manner, the right of the ultimate power of the electorate, acting in its sovereign (as distinct from its legislative) capacity, is preserved within the safeguards provided in the constitution for original change to a "home rule charter."

ing to amend the county charter by the initiative process, are not carrying out a legislative function or exercising a legislative power, and that the people are not a component of the legislative authority as meant by the Washington State Constitution. With this thesis, I am unable to agree. When applied to subordinate articles of government such as a municipal or county charter, as distinguished from the great or fundamental charters represented by the federal and state constitutions, amendment by initiative of the people, I think, is a component of the legislative authority.

In the King County charter, the people of King County, I think, reserved in themselves a direct legislative power to amend or repeal it by the initiative process. A municipal or county charter, unlike the state constitution, must be regarded as derivative, not from local political power but from a delegation of the powers of state sovereignty and subject at all times to state laws of general application. Where the state has delegated to its political subdivisions some of its sovereign powers, these powers must be exercised in consonance with general laws. *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964); *Petstel, Inc. v. King County,* 77 Wn.2d 144, 459 P.2d 937 (1969). Thus, to equate a county charter with the state constitution, as I think the court has done, is an error both in political philosophy and in constitutional law.

Const. art. 11, § 4 (amendment 21), the "Home Rule" provision, says that the county charter may be amended by "proposals therefor submitted by the legislative authority of said county to the electors thereof." In nearly perfect analogy, article 11, section 10, dealing with cities and towns, uses the same language to provide that city charters may be amended by proposals submitted by the legislative authority of the city to the electors. Legislative authority under this latter section (article 11, section 10) includes the people proceeding by initiative to amend their city charter. *State ex rel. Linn v. Superior Court,* 20 Wn.2d 138, 146 P.2d 543 (1944). Subsequently, in *State ex rel. Billington v. Sinclair,* 28 Wn.2d 575, 586, 183 P.2d 813 (1947),

this court, referring to article 11, section 10, affirmed the *Linn* rationale, stating that the "phrase 'Legislative authority,' as used therein, includes the voters, acting by way of an initiative or referendum."

The courts will not enjoin proposed legislative acts. *Minish v. Hanson,* 64 Wn.2d 113, 390 P.2d 704 (1964). *Cf. State ex rel. Bowen v. Kruegel,* 67 Wn.2d 673, 409 P.2d 458 (1965), in which we held that the more precise and narrower expression "legislative body" meant the city council. This latter holding, in my judgment, preserves the logical distinction between a legislative body and the legislative authority and confirms the proposition that the term "Legislative authority" when employed in a constitution is broader than "legislative body" and would include the people exercising powers of initiative and referendum.

A step-by-step delineation of the procedure undertaken by the proponents of the initiative will, I think, illustrate the soundness of this view. Petitioners hoped to persuade the people of King County to repeal their current home rule charter and restore the former system of county government. To that end, June 9, 1970, they filed with the King County Department of Records and Elections initiative petitions containing 28,054 signatures. These petitions complied fully with procedural requirements of the county charter and ordinances pertaining to King County initiative propositions and in the normal course of events, the initiative measure would have appeared on the general election ballot at the next King County general election, Tuesday, November 3, 1970. But events did not take their normal course. Plaintiff, a registered voter, landowner and taxpayer of King County, brought this suit in superior court to enjoin the King County Executive, members of the King County Council, and subordinate county officers from spending any public money to put the measure on the ballot, and to enter a declaratory judgment that the proposed initiative measure was unconstitutional and void.

In its conclusion No. 4, the trial court declared that:

Under the Constitution and laws of the State of Wash-

ington and the provisions of the King County Charter, the people of King County are completely without authority to amend or repeal the King County Charter through an initiative procedure.

It concluded in conclusion No. 5 that:

The proposed initiative measure . . . is completely outside the scope of the initiative power of the people of King County.

And further in No. 6, that:

The wording of the proposed initiative measure . . . is likely to mislead the electorate if the measure is allowed to appear on the election ballot.

Conclusion No. 7 held that the

proposed initiative measure . . . is procedurally defective and clearly void.

Supplementing these, the court entered the further conclusion that:

Under the Constitution and laws of the State of Washington and the provisions of the King County Charter, the people of King County have the right to change or alter the form of their county government only by the following procedures: (1) petitioning for an election of freeholders pursuant to Article XI, section 4, and Amendment 21 of the Washington Constitution; or (2) voting on charter amendments submitted to the people by the King County Council.

Largely upon these conclusions of law, the trial court on September 23, 1970, entered a declaratory judgment declaring the proposed initiative measure unconstitutional and void and permanently enjoined its submission to the electorate.

The case is here on petition for a writ of certiorari to have this court vacate the injunction and direct that the initiative measure be restored to the ballot. I would grant petitioner both remedies. Since the general election of November 3, 1970, has now come and gone, the precise relief sought in this petition cannot be granted but an appropriate remedy is available at the next countywide election.

The learned trial court, I think, was in error both in granting an injunction and in declaring the proposed initiative unconstitutional and void. Aside from initiative proposals that are so glaringly and categorically invalid and unconstitutional that reasonably minded persons could not sensibly hold otherwise, these two rulings, I think, postulate the two fundamental issues raised by this petition: Does an injunction lie to restrain the electorate from voting upon an initiative measure? Was the proposed initiative measure to amend the King County home rule charter by repealing it and to restore the former system of county government unconstitutional and invalid? I would answer both questions in the negative.

In 1968, at the general election November 5, the electors of King County adopted what is called a home rule charter as authorized by amendment 21 to the state constitution. Const. art. 11, § 4. This new charter abrogated the existing traditional form of county government as prescribed by statute and the state constitution (Const. art. 11; RCW Title 36), and supplanted the Board of County Commissioners with a legislative council and a county executive. The council and executive under the new charter assumed the old board's powers and duties and together exercised the legislative and executive powers theretofore carried out by the Board of County Commissioners.

Apparently some residents of King County are dissatisfied with the new charter and would like to see it repealed and the old form of county government restored. Intervenor, Overtaxed, Inc., a nonprofit corporation, along with its component members and officers, were among those sponsoring repeal of the home rule charter adopted in 1968.

That the proposed initiative measure was not so glaringly, patently and obviously unconstitutional that reasonably minded persons could not reasonably disagree about it[5] is clear and the chronology of events which culminated in

---

[5] An example of such glaring unconstitutionality would be a county ordinance abrogating the right to trial by jury in felony prosecutions.

placing it on the ballot and its subsequent removal therefrom by injunction bolster this view.

*March 13, 1970.* Defendant Ralph Stender, as Clerk of the King County Council, received for filing a proposed initiative measure which subsequently proved to be legally insufficient.[6]

*March 16, 1970.* Defendant Stender forwarded the first proposed measure to defendant Logan, Assistant Director of the Department of Records and Elections, requesting that officer to formulate a ballot title for it as prescribed by ordinance No. 00159, section 5.

Shortly thereafter, defendant Logan, in his official capacity, requested an opinion from Mr. Charles O. Carroll, Prosecuting Attorney for King County, as to the form and legal sufficiency of the proposed initiative measure.

*March 26, 1970.* The prosecuting attorney by letter gave to Mr. Logan a formal legal opinion and evaluation of the first proposed measure, advising that it was not in proper form, analyzing the ramifications of charter amendment procedures, pointing out that the initiative measure must, to be legally sufficient, explicitly declare a purpose to amend the charter. The letter suggested phraseology adequate to carry out this purpose, and advised the Director of Records and Elections as to the minimum steps which had to be taken and the procedures to be followed in putting the measure on the November 3, 1970, ballot.

*March 31, 1970.* The proposed initiative measure was submitted to Mr. Stender in final form.

*April 3, 1970.* Letter from Edward J. Logan as Assistant Director of Records and Elections to Ralph Stender, Clerk of the King County Council, setting forth an official pro-

---

[6]The first proposed measure, but found to be legally insufficient, read:
Be IT ENACTED BY THE PEOPLE OF KING COUNTY, STATE OF WASHINGTON: the following initiative petition;
To void the present count [*sic*] charter form of government and return King County Government to a three man commission form of government which was in existence prior to the adoption of the present county charter.

posed ballot title for the proposed initiative measure No. 3, as follows:

REPEAL OF KING COUNTY CHARTER

A Charter Amendment repealing the King County Charter and providing for a return to the statutory and constitution "commission" form of county government to be effective December 1, 1970.

*April 10, 1970.* The proposed form of petition setting forth in large letters that the signers were petitioning for "A Repeal of King County Charter" was received by defendant Stender.

*July 16, 1970.* Formal certificate of sufficiency executed by defendant Edward J. Logan 'as superintendent of elections certifying that petitions for initiative No. 3 had been examined, signatures compared and that the petitions were sufficient "under the provisions of § 230.50 of the King County Charter and under County Ordinance No. 00159" to place the measure on the ballot.

The proposed initiative measure No. 3, supported by valid petitions containing 28,054 signatures, certified for placement upon the ballot by the superintendent of elections and the King County Council, enjoined by the superior court, and now before us, reads:

INITIATIVE No. (3)
Charter Amendment
BE IT ENACTED BY THE PEOPLE OF KING COUNTY, STATE OF WASHINGTON:

Section 1. The King County Charter enacted by the people of King County on November 5, 1968, is hereby amended by deleting article 1 through article 9 inclusive, thereby repealing said charter.

Section 2. King County shall operate according to the constitution and laws of the State of Washington relating to county government.

Section 3. The amendment shall become effective December 1, 1970.

The first determinative error, I think, is that the court went beyond a preliminary inquiry sufficient only to decide whether the sponsors of the initiative proposal had com-

plied with all procedural steps essential to putting it on the ballot and enjoined the measure before it was voted upon. The second error, I think, was to hold the measure illegal, unconstitutional and void.

Standing as a great bulwark against autocratic government and evolving as a weapon for the preservation of our democratic institutions is the separation of powers exercised by the executive, legislative and judicial branches. The major responsibility to keep these powers separate falls upon the judiciary which at the same time must not itself violate the principles of separation. When the judiciary presumes to determine the validity of a legislative proposal before its enactment into law, except under the rarest of occasions, it breaches this separation, violates the separation of power doctrine and trespasses upon the constitutional prerogatives of the legislative branch—in this instance the electors of King County. Further, in order to hear and decide the constitutionality of this proposed initiative, the court not only trespassed upon and nullified the legislative power sought to be exercised by the people but went beyond the constitutionally prescribed function of the judiciary to render an advisory opinion in doing so for if the measure were rejected at the polls, the whole case would be mooted. *State v. Paul*, 87 Wash. 83, 151 P. 114 (1915). Advisory opinions are not only to be avoided as a matter of judicial policy (*State ex rel. O'Connell v. Kramer*, 73 Wn.2d 85, 436 P.2d 786 (1968)), but are outside the constitutional function of the courts of this state. Since the initiative measure had not been yet voted upon and was not palpably unconstitutional, its constitutionality and inherent validity were not a justiciable controversy before the court subject to a declaratory judgment. RCW 7.24.

An initiative measure is the exercise of the legislative powers, the same as that exercised by a constitutionally elected and qualified legislature. *State v. Paul, supra.* Initiative measures should, therefore, be no more nor less subject to injunction or declaratory judgment than is legislation proposed to or under consideration by the legislature. Any

measure involving legislative, as distinguished from judicial or administrative, functions of government under the present King County charter is the proper subject of initiative action. *Paget v. Logan,* 78 Wn.2d 349, 474 P.2d 247 (1970).

Except in those extremely rare instances where an initiative measure, even with customary severability clauses aimed at preserving its constitutionality, is so glaringly and palpably unconstitutional and void that reasonable minds could not conclude otherwise, the courts ought not enjoin an initiative from going upon the ballot any more than they can block the legislature from enacting a statute or the Governor from signing or vetoing it. An initiative measure is an exercise of the same powers of sovereignty as that exercised by the legislature. Thus, if the rationale of *State v. Paul, supra,* declares the governing principles to be applied here, the initiative measure should no more have been subject to injunction than would proposed laws introduced into the legislature or legislative body, for the court had to give an advisory opinion as to its constitutionality and validity in order to grant or deny the injunction.

In *State ex rel. Griffiths v. Superior Court,* 92 Wash. 44, 159 P. 101, 162 P. 360 (1916), where, because of fatal defects in the initiative procedures it was held that the measure could not be then placed on the ballot, this court made it clear that it was not deciding and would not decide upon the ultimate validity of the measure before its enactment, saying, at page 47:

> With the ultimate question of the validity of this proposed legislation, we have no present concern. Courts will not determine such questions as to contemplated legislation which may, perchance, never be enacted.

Again, in *State ex rel. Donohue v. Coe,* 49 Wn.2d 410, 302 P.2d 202 (1956), it was pointed out that, when a proposed initiative measure had gathered sufficient signatures and is properly presented to the Secretary of State and fully complied with statutory procedural requirements, the measure must be submitted to the people. Except in those rare

instances of undeniable invalidity, the substantive validity of an initiative measure is not subject to injunction prior to its enactment.

In *Donohue*, we said, at page 416:

Any interference with the secretary of state in the performance of the duties imposed upon him by the constitution and the statute relative to the handling and processing of initiatives can be justified only by express statutory or constitutional provisions making the question judicial, or if he acts without authority or in an arbitrary and capricious manner inconsistent with the spirit and intent of the statute or the constitutional provisions. We believe that all of our cases in which court interference has been approved fall within those exceptions. The present case does not.

Thus, the rule is well established in this state that only a serious breach of the statutory procedural requirements will warrant injunctive proceedings against a proposed initiative. *Edwards v. Hutchinson*, 178 Wash. 580, 35 P.2d 90 (1934); *State ex rel. Case v. Superior Court*, 81 Wash. 623, 143 P. 461, Ann. Cas. 1916B 838 (1914); *State ex rel. Evans v. Superior Court*, 168 Wash. 176, 11 P.2d 229 (1932). And this accords with our statement in *Paget v. Logan, supra,* at 354:

It being undisputed that the initiative petition here in question carried the requisite signatures to qualify for certification and placement upon the ballot pursuant to the mandatory commands of section 230.50, *supra,* and the subject matter of the proposal not being otherwise precluded by the charter, the ministerial act of placing it upon the ballot should not have been enjoined.

The Supreme Court of Oregon adheres to the same rule and holds that the courts lack jurisdiction to enjoin proposed initiative measures for substantive invalidity. *State ex rel. Stadter v. Newbry*, 189 Ore. 691, 222 P.2d 737 (1950); *Unlimited Progress v. Portland*, 213 Ore. 193, 324 P.2d 239 (1958).

Finally, this court ruled categorically that the courts would not enjoin an initiative measure from the ballot because of its suspected unconstitutionality. *State ex rel.*

*O'Connell v. Kramer*, 73 Wn.2d 85, 436 P.2d 786 (1968). After restating the oft-declared rule that the court does not render advisory opinions and pointing out that

> [t]here being before us no statute, or initiative measure enacted by the people, the proposed measure presents no justiciable controversy and we, therefore, do not pass upon its validity[,]

we emphasized that point by adding that

> we cannot pass on the constitutionality of proposed legislation, whether by bills introduced in the House or Senate, or measures proposed as initiatives, until the legislative process is complete and the bill or measure has been enacted into law. Then, and then only, can the constitutional issue now urged upon us be properly considered.

It is thus the rule in this jurisdiction that the courts will not pass upon the constitutionality of proposed or espoused legislation. There is no statute or ordinance to rule upon until it has become law. Therefore, in my opinion, the trial court was without jurisdiction to rule this initiative measure off the ballot because of its possible unconstitutionality or invalidity.

It is clear that the proposed initiative qualified procedurally for the general election of November 3, 1970, and had been properly certified. This brings us to the point where we must assume that had the measure been enacted, it would have been submitted to the court on its intrinsic legal merits, raising the next issue. Thus, the second issue then is whether, under the state constitution, the statutes and the Seattle City Charter, the people of King County possessed the political power to employ the initiative process as a means of amending and repealing their county charter. Putting first things first, we should begin, I think, with the basic premise that "All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." Const. art. 1, § 1. The power—intentionally reserved—to amend a county charter by initiative would undeniably be the reservation of a just political power as so declared.

The initiative process rests upon the basic well-established and now fundamental principle that the people have vested in themselves the direct power to legislate—to propose, enact and reject laws at the polls—independently of the legislative and executive branches. Amendment 7. Statutes implementing this constitutional power of direct legislation by the people are to be liberally construed and not to be frustrated by overly-rigid or hypertechnical judicial construction. *State ex rel. Donohue v. Coe,* 49 Wn.2d 410, 302 P.2d 202 (1956); *State ex rel. Case v. Superior Court, supra.* The more direct question thus arises, did the people of King County, in adopting the home rule charter, actually reserve the power to amend and repeal it by means of the initiative process? Before adopting the existing charter, the government of King County operated under the general statutes establishing and perpetuating county government under the state constitution. Its present government came into existence in 1968 with the adoption by the people of King County of a home rule charter as allowed by amendment 21 to the state constitution permitting any county to "frame a 'Home Rule' charter" for its own government subject to the constitution and laws of the state. The constitutional provision allowing the establishment of home rule county charters provides:

> Such charter may be amended by proposals therefor submitted by the legislative authority of said county to the electors thereof at any general election . . .

This constitutional provision relating to counties, as earlier observed, closely parallels that of article 11, section 10, providing for home rule charters for cities and towns:

> Such charter may be amended by proposals therefor submitted by the legislative authority of such city . . .

Const. art. 11, § 10 (amendment 40). Thus, can it be said that the people, in reserving the power of direct legislation by means of the initiative in their home rule charter, retained that segment of legislative power which is an integral component of and is included in what the con-

stitution in amendment 21 and amendment 40 describes as the legislative authority?

The King County charter establishes the initiative power in section 230.50, reading:

Ordinances except ordinances providing for the compensation or working conditions of county employees may be proposed by filing with the county council petitions bearing signatures of registered voters of the county equal in number to not less than ten percent of the votes cast in the county for the office of county executive at the last preceding election for county executive. Each petition shall contain the full text of the proposed ordinance.

The county council shall consider the proposed ordinance. If the proposed ordinance is not enacted within ninety days after the petitions are presented, it shall be placed on the ballot at the next regular or special election occurring more than one hundred thirty-five days after the petitions are filed or at an earlier election designated by the county council. However, if the proposed ordinance is enacted at any time prior to the election, it shall not be placed on the ballot or be voted on unless it is subjected to referendum.

If the county council rejects the proposed ordinance and adopts a substitute ordinance concerning the same subject matter, the substitute ordinance shall be placed on the same ballot with the proposed ordinance; and the voters shall first be given the choice of accepting either or rejecting both and shall then be given the choice of accepting one and rejecting the other. If a majority of the voters voting on the first issue is for either, then the ordinance receiving the majority of the votes cast on the second issue shall be deemed approved. If a majority of those voting on the first issue is for rejecting both, then neither ordinance shall be approved regardless of the vote on the second issue.

Ordinance No. 00159, in sections 2 through 6, implements the charter by prescribing the method and providing the means for putting the proposed measure on the ballot. There is no doubt here that petitioner fully complied with that ordinance.

The charter contains but one provision concerning amendments, section 800, which in pertinent part states:

> The county council may propose amendments to this charter by enacting an ordinance to submit a proposed amendment to the voters of the county at the next general election . . .

It is this section upon which the respondents mainly rely, urging that it necessarily limits the power of proposing amendments to the county council and that it necessarily excludes that power being exercised through the initiative. The contention may be summarized by stating that, where section 230.50 expressly authorizes the people to exact ordinances by initiative, section 800 of the charter by necessary implication prohibits them from proposing charter amendments by initiative. Thus it is argued that the term "legislative authority" as used in the home rule charter (amendment 21)—that charter amendments may be prepared by *"the legislative authority* of said county"—means the county council and only the county council; that *"the legislative authority"* does not mean the people, too. (Italics mine.)

It is a well-settled rule that enactments providing for the initiative and referendum are to be liberally construed so as to give them effect and that hypertechnical construction which deprives them of effect is to be avoided. *State ex rel. Donohue v. Coe, supra.* The charter itself, both in section 230.50 which vests a segment of the legislative power in the people, and in section 220.20 placing the usual legislative powers in an elected council, does not, I think, create a mutually exclusive dichotomy. The two powers do, I think, exist side by side, and each may be exercised without trespassing upon the other. The charter, in section 220.20, says that the county council is the "policy determining body of the county" with "all legislative powers of the county." This does not mean, however, that either policy determination or legislative power may be exercised by the legislative body to the exclusion of the legislative authority reserved in the constitution to the people. Except for "ordinances providing for the compensation or working conditions of county employees" (section 230.50), the charter places no limitations whatever upon the kinds, nature or subject

matter of initiative proposals. I would, therefore, read the constitution of the state as set forth in amendment 21 and the King County charter itself to mean that the King County charter can be amended by the people to the point of repeal either upon submission by the county council or by initiative. In the final analysis, the adoption or rejection must go before the same decision-making authority—the electors of King County.

This issue, I think, was largely resolved in favor of sustaining the power to amend by initiative process in *State ex rel. Linn v. Superior Court*, 20 Wn.2d 138, 146 P.2d 543 (1944), where, under strikingly similar circumstances and remarkably similar constitutional provisions, we held that the home rule charter of a city could be amended by initiative if statutory notice requirements were met.

That case, as I read it, involved the same issue as the instant one: Did the people have power to propose and enact amendments to the city charter by the process of initiative? The city charter subject to amendment had been adopted by the people of Seattle under Const. art. 11, § 10 (amendment 40), which, as earlier observed, contains a provision remarkably similar to the one under which King County adopted its present home rule charter:

> Such charter may be amended by proposals therefor *submitted by the legislative authority* of such city to the electors thereof at any general election . . .

(Italics mine.) Answering the precise question in issue, the court in *State ex rel. Linn* said:

> Of course the question presents itself as to whether or not the words "legislative authority," as used in the section of the state constitution above quoted, should be held to include the people acting in accordance with their right to initiate legislation pursuant to existing laws, so as to make the requirement of thirty days' notice applicable to legislation by way of charter amendments initiated by the people, as well as to that sponsored by a city council or other legislative body.

Amplifying the meaning of the term, the court went on:

> At the time of the adoption of the constitution by the

electors of this state, several different types of municipal legislative authority were familiar to the common law of the United States. The town meeting of New England is a conspicuous example. The phrase used is as broad as any description could be, and should be held to include any legislative authority that may obtain in a particular city at the time the constitutional provision is invoked.

and:

To hold that the constitutional provision of the state of Washington above quoted, by the term legislative authority, related only to some one form of municipal legislature, and does not apply to other systems, would unduly restrict the constitutional language.

and concluded:

Our cases are not harmonious, but *we now hold* that the constitutional provision requiring the giving of notice is mandatory, and *that the phrase "legislative authority,"* as used therein, *includes the voters acting by way of an initiative or referendum.*

(Italics mine.)

It does not necessarily follow that, if the people reserved the power to amend a city or county charter by initiative process, they reserved the same power with respect to the state constitution. Whatever parallel may be said to exist between the two is, I think, superficial and tenuous. Where county and city powers of government are derivative and delegative, the state is a sovereign entity. The municipality operates by virtue of delegated powers; the state as sovereign does the delegating. Thus, when the people accord to their state government both express and implied powers and prescribe limitations upon the exercise of those powers by means of a basic and organic charter, they could well have believed that the state constitution should not be amended for light nor transient causes nor by quick and ready means, but that the same ideas ought not prevail with respect to subordinate and delegated organs of government such as counties and cities.

In my opinion, therefore, the people of King County, reserving unto themselves in their charter a substantial seg-

ment of legislative authority by means of the initiative and referendum, reserved the right to amend or repeal their charter by the exercise of this authority. Thus, I think the court was without jurisdiction to enjoin the election; secondly, if enacted, I think the repeal of the charter would have been effective.

ROSELLINI and HUNTER, JJ., concur with HALE, J.
Petition for rehearing denied June 4, 1971.